PASSENGER FARE ENUMERATOR, ETC., CO. v. METROPOLITAN R. CO. See Case No. 11,535.

PASSMORE (UNITED STATES v.). See Case No. 16,005.

PATAPSCO, The (BOYCE v.). See Case No. 1,744.

---

## Case No. 10,792.

### PATAPSCO GUANO CO. v. MORRISON et al.

[2 Woods, 395.] [1]

Circuit Court, S. D. Georgia. April Term, 1876.

TRUSTS—POWER TO SELL — AUTHORITY TO MORTGAGE—CONSTRUCTION OF STATE STATUTES.

1. A power in a trust deed to sell and reinvest on the same limitations and trusts does not include by implication the power to mortgage.
　[Cited in Jeffrey v. Hursh, 49 Mich. 32, 12 N. W. 898.]

2. Nor does a statutory provision giving power to the judge of a court to pass an order authorizing the trustee to sell or convey the corpus of the trust estate confer power to authorize the trustee to mortgage it.

3. The federal courts are not bound to follow the construction put upon a state statute by an inferior state court.
　[Cited in Lookout Mountain R. Co. v. Houston, 44 Fed. 450.]

4. A trustee, unless expressly authorized, cannot issue negotiable paper executed in his trust character so as to bind the trust estate.

The cause was heard for final decree upon the pleadings and evidence.

The facts were as follows: In the year 1843, the defendants Gideon A. Dowse and Sarah A. Dowse, then Sarah A. Morrison, being about to marry, entered into an ante nuptial contract with George Harris, since deceased, and the defendant Robert J. Morrison as trustees. This contract, after reciting that it was desirable that a proper settlement and provision should be made for said Sarah A., and any child or children she might have, and that the said Sarah A. was then the owner of several slaves and about eight thousand dollars in money, provided that the money should be invested in a plantation, which was done. The contract declared that all the property of said Sarah A. was to remain her sole estate until her marriage with said Gideon Dowse, and then should vest in said trustees in trust for the use and joint lives of her and her said husband, and should she survive him, to her in fee; but should she die before her said husband, leaving a child or children, or the issue of a child or children,

then to said Gideon and them for their joint use until the eldest child became of age or married, when the estate was to be divided, share and share alike. And if the said Sarah A. should die before the said Gideon A., leaving no child or children or the issue thereof, then to Gideon A. in fee.

The contract contained the following power: "That should a sale or exchange of any portion of said property be desired, it may take place by the written consent of the parties in interest, the proceeds of said sale to be vested in other property, to be held in trust, and upon the same limitations as are herein stated." It also provided that in case it should be necessary from the death or disability of one or both of said trustees, another or others might be appointed by Sarah A. and Gideon, or, if he refuse, by her alone.

The Code of Georgia (section 2327) declares: "A trustee, unless expressly authorized by the act creating the trust, or with the voluntary consent of all the beneficiaries, has no authority to sell or convey the corpus of the estate; but such sale must be by virtue of an order of the court of chancery, upon a regular application to the same. Such application may be made to the judge in vacation, on full notice to all the parties in interest, and the order for such sale may be granted at chambers, the proceedings to be recorded as an application for appointment of trustees."

Relying upon this section of the Code, in February, 1871, Robert J. Morrison, surviving trustee, Gideon Dowse for himself and as next friend for his wife Sarah A., Mary Low by her next friend, her husband, Samuel Dowse, and James Dowse, a minor, by his next friend, Samuel Dowse, "being all the parties in interest," presented, by Mr. Perry as attorney, a petition to the judge of the superior court of Burke county, for leave to mortgage the trust estate, stating, inter alia, that the management of the property was in charge of Gideon and Samuel Dowse; that provisions and money were necessary to carry on the farm and support the cestuis que trust, and they, being unable to procure such aid, under the laws of the state regulating trusts, pray the said judge to grant a decretal order authorizing the trustee to execute a mortgage deed to any proper person, merchant, factor or money lender, for such supplies, commercial manures, farming implements, or money—pledging said trust property to insure any debt created in such manner and for such consideration, the mortgage to comply in form and substance with the laws of this state, and to be valid in every intent and meaning thereof. That said Gideon and Samuel had wholly failed in their endeavor to procure supplies, money, etc., and that the only relief promised them had been made in view of the granting of a decretal order, and execution of a mortgage in accordance with the same. This "bill of complaint" was verified by Samuel Dowse, before the judge, on

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

the 21st of February, 1871, and a copy of the marriage contract was annexed to it as an exhibit. On the same day, the judge granted the decretal order; which order, after reciting the substance of bill and marriage articles, concluded as follows: "It is, therefore, ordered and decreed that said Robert J. Morrison be, and he is hereby authorized and empowered to execute a mortgage deed to all or any part of said trust land as may be required, to any person who will furnish said trustee or his agent either with such necessaries as the circumstances of the case require, or money to purchase the same, and that the mortgage so created shall be in every respect valid and binding upon said trustee, and shall attach to the land so conveyed until the debt is satisfied. It is further ordered that this proceeding constitute the records of the superior court of Burke county; provided, further, that the sum borrowed or amount furnished shall not exceed the amount or sum of $2,000; and that a first lien be also taken upon the crop to be raised the present year to secure the same also."

In pursuance of this authority as it is claimed, Morrison, the trustee, executed a note for two thousand dollars to one Wilkins, which he signed "R. J. Morrison, trustee for S. A. Dowse and children," and to secure the same, executed a mortgage to Wilkins on the trust property, which he signed under the name and description of "R. J. Morrison, trustee." Wilkins transferred the note and mortgage before maturity to the complainant in this cause. The object and prayer of the bill was that the complainant might have a decree for the amount due on the said note, and that the mortgaged premises might be sold to pay the same.

W. W. Montgomery and H. C. Cunningham, for complainant, argued that the authority of Morrison, the trustee, to execute the note and mortgage, was complete, and that even, if this authority were defective, the transfer of the note and mortgage to complainant as a bona fide holder before maturity cured any defect of authority for their execution, and made the note and mortgage binding on the trust estate.

R. E. Lester and T. M. Berrian, for defendants, relied, as a defense, upon the absence of authority in Morrison, the trustee, to execute the note and mortgage, and claimed that no such authority was contained in the ante nuptial contract, and that the superior court of Burke county had no power under the Code of Georgia to confer such authority. They further claimed that a trustee, unless expressly authorized, could not issue commercial paper to bind the trust estate, and the form on which the note and mortgage were executed put the transferee in inquiry, which, if followed up, would have shown that Morrison had no authority to execute them.

The cases cited by counsel are referred to in the opinion of the court.

ERSKINE, District Judge. Two distinct views of this cause were presented by counsel for plaintiffs; and it was argued that the maintenance of either would warrant a decree for the plaintiff. First, that the power in the marriage articles, to sell or exchange any portion of the trust estate and reinvest the proceeds in other property upon the same limitations and trusts, conferred authority to execute a mortgage. Or, secondly, the authority to mortgage was valid under the decretal order of the chancellor by virtue of section 2327 of the Code. In support of the first view, Allan v. Backhouse, 2 Ves. & B. 65, was relied on. There, the testatrix, after devising leasehold estates, held upon bishops' leases for lives, and all her other real estate, to certain uses, directed the renewal of her leaseholds, and that the expenses should be raised out of the rents and profits of the leaseholds, or any part of the freehold estates, to the end that they might be enjoyed therewith as long as might be. The vice chancellor said, that the word "profits," ex vi termini, includes the whole interest, as a devise of the profits would pass the land itself. And he held, that as the purpose for which the money was to be raised out of the rents and profits might require it suddenly, for the lessors could not be expected to wait for the gradual payment out of the rents, and as there was nothing in the will to give these words the abridged sense of annual profits, except the purpose to preserve the estate entire, he warranted the sacrifice of part for the preservation of the remainder, and decreed that the gross sum for fines on renewal of leases, as well as to raise portions, might be raised by sale or mortgage, and thereby effect the purposes of the testatrix.

On perusing that case, it will there be found admitted, that the natural signification of the words "issues and profits" is annual "rents and profits." Yet the vice chancellor extended their meaning, "when applied," as he said, "to the object of raising a gross sum at a fixed time; when it must be raised and paid without delay, to a power to raise by sale or mortgage, unless restrained by other words." In Bloomer v. Waldron, 3 Hill, 361, Cowen, J., speaking of Allan v. Backhouse, called it "an extraordinary case." And in the late case of Earl of Shaftesbury v. Duke of Marlborough, 2 Mylne & K. 111, which was a trust to renew out of the "rents, issues and profits," it was held, by Sir John Leach, M. R., to be confined to annual rents, issues and profits, on the authority of Stone v. Theed, 2 Brown, Ch. 243, in opposition to Allan v. Backhouse.

They likewise relied on the case of Wayne v. Myddleton, 2 Ga. 383. There, four slaves were conveyed in trust for the sole use of Mrs. P., and after her death, to her children; the deed gave her the power, with the consent of the trustee, to sell and dispose of the trust property, whenever she should deem it proper to do so, the proceeds to be reinvest-

ed upon like trusts. She purchased land and the growing crop thereon from one M., and hired his slaves to assist in the crop, and to secure the purchase money and hire of the hands, she, with the consent of the trustee, made a mortgage on the trust property to M. The court held the power well executed, remarking, inter alia, that it "was a power without limitation, except that the property substituted for the slaves shall be covered with the same trusts." The decision was based upon the fact that the mortgage was given "for the purpose of acquiring, by purchase, other trust property to stand in the place of, and be substituted for the property mortgaged." Counsel also cited 4 Kent, Comm. 147, 148, where the author in speaking of powers of sale inserted in mortgages, says that "the better opinion would seem to be, that a power of sale for the purpose of raising money will imply a power to mortgage, which is a conditional sale." It is too evident to need citations, that the chancellor referred solely to mortgages at the common law, where the title passed to the mortgagee immediately on delivery of the conveyance in mortgage, the law investing the mortgagee with authority to sue out a writ of right or ejectment against the mortgagor in possession, even before condition broken. But in this state, a mortgage is not a conditional sale; it does not clothe the mortgagee with a power coupled with an interest, nor pass any estate; it creates a lien only, and the title remains in the mortgagor until foreclosure and sale. Code, § 1954; Davis v. Anderson, 1 Kelly, 176; U. S. v. Athens Armory, 35 Ga. 344; Lockett v. Hill [Case No. 8,443].

But the chancellor, in his lecture on Powers (4 Kent, 331], says: "As a general rule, a power to sell and convey does not confer a power to mortgage," and he cites 1 Sugd. Powers, 528; 2 Chance, Powers, 388. And here let it be inquired whether the power conferred by the marriage contract is an exception to the rule. The language is: "That should a sale or exchange of any portion of said property be desired, it may take place by the written consent of the parties in interest; and the proceeds from said sale to be vested in other property to be held in trust, and upon the same limitations as are herein stated." Some cases will now be referred to as illustrative of the rule: In Haldenby v. Spofforth, 1 Beav. 390, the power was "to make sale and dispose of the testator's lands by private sale or at auction;" and it was held by the master of the rolls, Lord Langdale, not to authorize a mortgage. He said: "I think that the clear and manifest intention of the testator was to have a sale out and out; to have a complete conversion of his real estate. * * * I think that the terms of this will do not authorize a mortgage, and therefore the mortgagee has not got a valid title."

In Stroughill v. Anstey, 1 De Gex, M. & G. 635, a devise was to trustees, charged with debts, etc., with direction for, or trusts which require further, an out and out conversion; and the lord chancellor held that a mortgage was not a proper mode of raising the charges.

In Bloomer v. Waldron, supra, the testator gave to his wife "full power to sell and convey all or any part of the real estate, provided A. B. shall consent to such sale, etc.; the moneys from such sales to be vested and secured in such manner as the said A. B. shall direct for the purposes of this my will." She executed a mortgage in fee to H. R., with the consent of A. B.; but the court decided that this was not a proper execution of the power, and declared the mortgage to be a nullity.

In Coutant v. Servoss, 3 Barb. 133, the deed conveyed lands to the grantee, in fee, in trust for the benefit of others, and conferred upon the grantee the power to grant, bargain, sell and convey the same, and to make and execute the necessary conveyances for the benefit of the cestuis que trust. The court held that these terms did not confer a power to mortgage. And citing Bloomer v. Waldron, and other authorities, the court said: "These cases are explicit that the power to sell, when, as in this case, it is general and unqualified, does not include the right to mortgage, and this is in accordance with the well known rule that powers should be construed strictly."

In Albany Ins. Co. v. Bay, 4 Comst. (N. Y.) 9, S. had devised lands in trust, to trustees, with power to "sell and dispose of such parts, in fee simple or otherwise, as Mrs. T., the cestui que trust, by writing under her hand, should from time to time request and desire." The court (two of the eight judges dissenting, and apparently laying stress upon the word "otherwise") decided that the power did not include authority to execute a mortgage. See Cummings v. Williamson, 1 Sandf. 17; Wood v. Goodridge, 6 Cush. 117; Hubbard v. German Catholic Congregation, 34 Iowa, 31; Head v. Temple, 4 Heisk. 34; Page v. Cooper, 16 Beav. 400; Devaynes v. Robinson, 24 Beav. 86.

Viewed in the light of those principles which govern the interpretation of powers inserted in marriage settlements and other instruments, and applying the cases just cited to the power under consideration, and looking to the natural and obvious import of the words employed in creating the power to sell or exchange any portion of the property, and reinvest the proceeds arising from the sale in other property upon the same limitations, trusts, etc., it is, to my mind, manifest and put beyond question or doubt that it was not the intention of the settler to confer authority to mortgage the whole or any portion of the estate for any purpose. And I think the authorities well warrant the conclusion that "a trust for sale, with nothing to negative the settler's intention to convert the estate absolutely, will not authorize the trustees to ex-

ecute a mortgage." Perry, Trusts (1st Ed.) § 768.

Although the bill is framed solely on the alleged authority of the decretal order to the trustee, yet the discussion, no objection being interposed, was as prominent on the marriage settlement as on the order. And having ruled upon the settlement, I pass to section 2327 of the Code, and the decretal order of the judge, upon which the decree must be based.

The arguments presented by counsel were, in substance: That the promissory note of February 21, 1871, for $2,000, made by Morrison and payable to G. A. Wilkins, or order, on the 1st of January, 1872, and the mortgage on the trust estate of even date with the note, and given to secure the payment thereof were, at the same time, delivered to Wilkins, who, before maturity of the note, indorsed it and also assigned the mortgage to the plaintiff for value; that the note and mortgage are a valid and binding debt against, and a lien upon the trust property, the trustee having been judicially authorized to bind the estate by the decretal order of the judge, of February 21, 1871, rendered in accordance with the section of the Code referred to.

It declares that "a trustee, unless expressly authorized by the act creating the trust, or with the voluntary consent of all the beneficiaries, has no authority to sell or convey the corpus of the trust estate, but such sales must be by virtue of an order of the court of chancery upon a regular application to the same. Such application may be made to the judge in vacation, on full notice to all the parties in interest, and the order for such sale may be granted at chambers." etc.

Counsel for defendants insisted that this section did not empower the judge of the superior court to authorize the trustee to execute the mortgage. For the plaintiff, it was urged that he did possess authority to decree the making of the mortgage; that in entertaining the application of the trustee and cestuis que trust for leave to mortgage the trust estate, he acted within the jurisdiction given by the section; that he had cognizance of the parties and the subject matter, and that the decretal order was, in all respects, a valid act, and binding on the estate. And possessing jurisdiction in the premises, as was contended, if the judge made an erroneous decree, still, that matter could not be questioned in this court. Such is the substance of the views presented by the respective counsel on this branch of the case.

Now, does the section in question really confer on the superior court or judge the jurisdiction claimed by the plaintiff—the power, under any circumstances, to authorize a trustee to mortgage trust property? If I comprehend the meaning and scope of the section, it is when no express authority is given by the instrument creating the trust, to the donee or trustee of the power, to sell or convey the corpus of the trust property, that the superior court or judge can act and

order a sale. Then if this be so, this section, so far as the case before this court is concerned, has no application whatever, for the marriage settlement of 1843 expressly declares that should a sale or exchange of any portion of the trust property be desired, it may take place by the written consent of the parties in interest. So, unless the words in the section "to sell or convey the corpus of the trust estate," when tested by the rules of interpretation, include authority to mortgage, the decretal order was, I think, unauthorized.

But it was contended for the plaintiff, that this court cannot question the construction given to this enactment by a state court, or in this particular case, by a state judge, unless the statute itself or its construction conflicts with the constitution or laws of the United States; that when a state court or judge expounds a state statute, such exposition becomes a rule binding on the national courts, and that if the decision of the superior court judge is incorrect, the state supreme court is the tribunal to review and revise it, and not the United States circuit court.

But this court does not claim any supervisory or appellate power over the state court or judge; it merely entertains jurisdiction of this suit because of the citizenship of the plaintiff; and being thus called on to administer a law of the state of Georgia, it will, if possible, follow the decision of the state judge. A state statute, when it appertains to rights and titles in things having a permanent locality, and a construction is placed upon it by the highest state court, becomes a rule of decision in the federal courts; but the rule does not apply to the construction of contracts. To which class section 2327 belongs is of no consequence here; for no part of it has ever been expounded by the supreme court of this state. Judiciary Act, § 34; Van Bokelen v. City R. R. Co. [Case No. 16,830]; Leffingwell v. Warren, 2 Black [67 U. S.] 599; Williams v. Kirtland, 13 Wall. [80 U. S.] 306.

The power prescribed in the section to sell or convey the corpus of the trust estate is, to my mind, susceptible of no other meaning than that the legislature intended to negative any authority to decree a mortgage. If this view is correct, then the word "sale," as there employed, is to be understood in its general legal sense: that a sale decreed by the court or judge means an out and out alienation, and not a sale subject to a charge, or conjoined with a defeasance. I am also of opinion that the term "convey," which is in signification and effect sufficient to answer the requisites of a grant at common law (Patterson v. Carneal, 3 A. K. Marsh. 618), is there used as synonymous with "to sell." The language of the section or statute is "to sell or convey the corpus of the trust estate." As already remarked, a mortgage in Georgia passes no estate; the title remains in the

mortgagor until subsequent foreclosure and sale. I may add, that when powers are derived under a legislative act, the mode and directions for the execution of these powers must be sought for in the act. And in support of the views here expressed, the cases cited on the power in the marriage settlement are referred to.

The right and title of the plaintiff in and to the two thousand dollar promissory note, and the mortgage given to secure it, will now be passed upon. Plaintiff relied upon Carpenter v. Longan, 16 Wall. [83 U. S.] 271, and Taylor v. Page, 6 Allen, 86. In the first case, the court held that where a negotiable note, secured by a mortgage, is transferred to a bona fide holder for value before maturity, and a bill is filed to foreclose the mortgage, no other nor further defenses are allowed as against the mortgage than would be allowed were the action on the note brought in a court of law. In the other case, a negotiable note secured by mortgage was given for the price of liquor sold in violation of law; and the court ruled that though the note and mortgage were void as between the original parties. it was valid in the hands of a bona fide indorsee for value, without notice of the illegal consideration. The presumption is, that the $2,000 note was indorsed, and the mortgage transferred to the plaintiff by Wilkins while the note was under due. The transfer on the mortgage bears date prior to the maturity of the note. The note is signed "R. J. Morrison, trustee for S. A. Dowse and children;" the mortgage "R. J. Morrison, trustee," and it recites that it is made "in pursuance of a decretal order passed by William Gibson, as judge of the Augusta circuit, having jurisdiction in equity, passed on the 21st of February, eighteen hundred and seventy." And the mortgage deed is made "between Robert J. Morrison, trustee for Sarah A. Dowse and her children, of the first part, and Gilbert A. Wilkins of the second part."

In Carpenter v. Longan [supra], the court said: "The assignment of the note under due raises the presumption of want of notice, and this presumption stands until overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable." The promissory note given by Morrison to Wilkins, who indorsed it to the plaintiff, and for which the mortgage is intended to be collateral security, was a negotiable instrument; and though the words "trustee for S. A. Dowse and children" were appended to the name of the maker, they are mere descriptio personarum, and carry no power to bind the trust property, unless the marriage settlement, or the decretal order authorized him, as such trustee, to make and issue commercial paper binding on the trust estate. It will not, I suppose, seriously be said that such authority. was conferred by the marriage settlement, or by the Code, or that it could be by the decretal order. A trustee has no power

to bind, ex directo, the trust estate by promissory notes or bills of exchange, though such acts may make him personally liable. Story, Prom. Notes, § 63, and cases there cited; Lovelace v. Smith, 39 Ga. 130. Still, it was contended that the rule laid down in Carpenter v. Longan and Taylor v. Page, controls this case; that as the plaintiff, the indorsee, acquired the note before it fell due, fairly, and for value, and without notice of any defect or infirmity in the instrument, the plaintiff holds it free from all equities and defenses existing between the antecedent parties. In those cases, the question for determination was not whether the notes bore marks of caution or carried defects on their face; but whether there was proof dehors the instruments themselves to impeach the holders' title and right to recover. In both cases the question was one of. fact; here, the question is matter of law. In the case before this court, no proof, outside of the note itself, has been produced, therefore the presumption is that none exists; but there are indicia on its face—facts and circumstances accompanying it, sufficient to have put the plaintiff, whose agent Grafflin received the note and mortgage simultaneously from Wilkins, the indorser of the former and transferer of the latter, on guard and inquiry before acquiring dominion over the note. If the plaintiff mistook the law by supposing that the words "trustee for S. A. Dowse and children," added to the signature of Morrison, were potent to bind the trust property, such ignorance is a misfortune against which this court has no power to relieve.

It is ordered and decreed by the court that the bill be dismissed.