RHODE ISLAND HOSPITAL TRUST COMPANY *vs.* COMMERCIAL NATIONAL BANK *et al.*

When a testamentary gift is expressly limited to the donee for life, a superadded power given to the donee to sell and appropriate the proceeds will not enlarge his interest into an absolute estate.

A testamentary gift for life, with added power in the donee of sale and appropriation of proceeds, will not enable the donee to mortgage more than his life interest.

BILL IN EQUITY to construe a will, for an account, and for an injunction. On demurrers to the bill.

The will of Mary R. Burnside, of the city of Providence, dated September 18, 1871, and proven before the Municipal Court of the city of Providence, April 4, 1876, contains the following provisions:

"I, Mary R. Burnside, of the city and county of Providence, in the State of Rhode Island, wife of Ambrose E. Burnside, make this my last will and testament in manner following, that is to say:

"I give, devise, and bequeath to my beloved husband Ambrose E. Burnside, for and during the term of his natural life, the free use and improvement, rents, profits, and income of all my estate, real, personal, and mixed, wherever or however the same is or may be situated, and including therewith all such other real estate as I may hereafter acquire of which I shall die seized, possessed of, and entitled to at the time of my decease.

"To have and to hold the same to him the said Ambrose E. Burnside, for and during the term of his natural life, with full power and authority, at his pleasure, to change the investment of any of my personal property and estate, and also with power and authority, at his pleasure, to sell, transfer, and convey any portion of my personal property and estate, execute the requisite conveyance and conveyances thereof, receive the proceeds of any such

sale or sales, and apply and appropriate the net proceeds thereof to and for his own use, benefit, and behoof forever.

" And from and upon the decease of my said husband Ambrose E. Burnside, I give, devise, and bequeath to my mother Fanny Bishop, if then living, for and during the term of her natural life, the free use and improvement, rents, profits, and income of all my estate then remaining, real, personal, and mixed, wherever or however situated.

" To have and to hold the same to her, the said Fanny Bishop, for and during the term of her natural life.

" And from, after, and upon the decease of them, the said Ambrose E. Burnside and Fanny, I give and bequeath "   .   .   .

Follow a series of legacies, and a residuary devise and bequest, after which come the appointment of executors and a revocation of prior wills.

*January* 31, 1885.   DURFEE, C. J.   The bill shows that Mary R. Burnside, wife of General Ambrose E. Burnside, late of Providence, died March 9, 1876, leaving a will by which she devised and bequeathed all her property, real and personal, to General Burnside for life, " with full power and authority at pleasure to sell, transfer, and convey any portion of my personal property and estate, execute the requisite conveyance and conveyances thereof, receive the proceeds of any such sale or sales, and apply and appropriate the net proceeds thereof to and for his own use, benefit, and behoof forever." The will gives all the estate of the testatrix remaining at the decease of General Burnside to her mother for life, and then to other persons and charities. The will appoints General Burnside executor, and after his decease the complainant corporation. It was admitted to probate April 4, 1876. General Burnside having qualified as executor, filed an inventory of the personal estate, which was accepted August 21, 1877, and October 2, 1877, settled his first and only account, wherein he charged himself with the whole amount of the inventory as " taken to myself for life, as per the will of Mary R. Burnside."

The personal property, as inventoried, was appraised at $69,506.26, and consisted in part of forty five eight and a half per cent. one thousand dollar bonds, appraised at $45,000, made by one Simon B. Buckner, and secured by a trust mortgage of his

real estate in Chicago to the Farmers' Loan and Trust Company of the city of New York. The bonds were issued payable to bearer, but contained the following provision, to wit: " The holder of this bond may present the same at the office of said The Farmers' Loan and Trust Company for registration, and the same shall thereupon be registered in conformity with usage in such case, and thereupon it shall become and be payable, both principal and interest, to the order of said holder, or to the bearer, as he may elect." After the probate of the will General Burnside delivered eighteen of these bonds to the Commercial National Bank of Providence, as security for moneys lent. The eighteen bonds were registered under the provision therein by Mary R. Burnside, in her lifetime, in her name, and when pledged bore an indorsement under date of November 14, 1872, signed by the transfer agent, indicating that they were then transferred into her name. A copy of one of the bonds, annexed to the bill as a sample of all, likewise bears an indorsement under the date of November 21, 1876, indicating that it was then transferred to the Commercial National Bank of Providence ; but the complainant alleges in the bill that it is ignorant of the form of the pledge. The bill, however, alleges that the pledge was made by General Burnside in his own name and to secure his own indebtedness, and that the bank took the bonds with full notice that they were a part of the estate of Mary R. Burnside, and that the General had no right or title in them other than that given him by her will. General Burnside died September 13, 1881, leaving said eighteen bonds still in pledge, and after his death they were paid, the money being received by the bank. On October 21, 1881, the complainant qualified as executor of the will of Mary R. Burnside, and afterward demanded of the bank the money received on the said bonds above the life interest, if any, of General Burnside. The bank refused to comply with the demand, claiming that the General had full power to pledge the bonds. The bill also sets forth that one J. Howard Manchester has been appointed administrator on the estate of General Burnside, and that as administrator he claims the surplus of the money received in payment of the eighteen bonds, beyond what is necessary for the payment of the indebtedness to the bank, as belonging to the

estate of General Burnside. The complainant brings this suit against the bank, and said Manchester as administrator, for a construction of the will, a determination of the rights of the several parties, for an account by the bank, and for a decree for such portion of the proceeds of the bonds as is due to it. The defendants have severally filed general demurrers to the bill.

The ground on which the defendant Manchester rests his claim is that the will of Mary R. Burnside bequeaths her personal estate in legal effect absolutely to her husband, the power of disposition given to him being inconsistent with and destructive of the limitations over. Some of the cases cited in support of this view are closely if not exactly in point. *Bean* v. *Myers,* 1 Cold. 226; *Davis* v. *Richardson,* 10 Yerg. 290; *May* v. *Joynes,* 20 Gratt. 692; *Irwin* v. *Farrer,* 19 Ves. Jun. 86. We think, however, that where in a will the gift to the first taker is expressly limited to him for life, it is not enlarged into an absolute gift by the mere annexation of a power to him to dispose of or appropriate the fee or capital, at least when the power is only a power to dispose of or appropriate the fee or capital during his life. For, as has been well said, " an express bequest of an estate for life negatives the intention to give the absolute property and converts the superadded right of disposition into a mere power." *Denson* v. *Mitchell et ux.* 26 Ala. 360. Of course we ought, if possible, to construe a will according to the intention of the testator, and, in such a case, we have only to treat the power bestowed as a power, and not as property, in order to give effect to the limitations over. And we think this view is best supported not only in reason but by authority. 4 Kent Comment. *435; *Jackson* v. *Robins,* 16 Johns. Rep. 537, 588; *Ayer* v. *Ayer,* 128 Mass. 575; *Burwell's Executors* v. *Anderson,* 3 Leigh, 348, 356–358; *Stuart* v. *Walker,* 72 Me. 145; *McCauley's Appeal,* 93 Pa. St. 102; *Flintham's Appeal,* 11 Serg. & R. 16; *Burleigh* v. *Clough,* 52 N. H. 267; *Pennock* v. *Pennock,* L. R. 13 Eq. 144; *Herring* v. *Barron,* L. R. 13 Ch. Div. 144; *Smith* v. *Bell,* 6 Pet. 68. Among these cases we direct attention particularly to *Burleigh* v. *Clough,* where the point is exhaustively examined and discussed. We therefore decide that the claim of Manchester as administrator cannot be sustained.

The next question is whether the Commercial National Bank is entitled to apply the money received on the bonds, beyond the interest accruing thereon during the life of General Burnside, to his indebtedness. We do not think it is necessary to the determination of this question to decide whether the bond of an individual, payable in terms to order or bearer, is negotiable, or whether the eighteen bonds after registration, if originally negotiable, ceased to be transferable by simple delivery; for, as the case stands, we feel bound to suppose that the indorsement of November 21, 1876, was made by the direction of General Burnside, and was as effectual to transfer the bonds, as against the obligor at least, as an indorsement by General Burnside himself would have been, and that the bank took them with notice that they were a part of the estate of Mary R. Burnside, and that he had no other title than was given him by the will, such notice being expressly averred. The bill also avers that the bonds were pledged or transferred to the bank by General Burnside in his own name to secure his own indebtedness, so that we think the bank is precluded from claiming that the transaction was with him as executor. We also think that there is nothing in the bill to show that the complainant has been guilty of *laches*, or even of any unreasonable delay, in making its claim upon the bank. The question, therefore, on the pleadings as they stand is, was the power conferred on General Burnside by the will broad enough to authorize the transfer of the bonds to the bank as security for moneys lent to him.

The complainant has cited numerous cases [1] in which a power to sell was held not to authorize a mortgage. The cases are mostly cases in which it was manifest, or at least inferable, that an out and out conversion of the property was intended, being cases in which the power was bestowed on trustees, agents, or executors,

---

[1] *Stroughill* v. *Anstey,* 1 De G., M. & G. 635 ; *Haldenby* v. *Spofforth,* 1 Beav. 390 ; *Devaynes* v. *Robinson,* 24 Beav. 86 ; *Bloomer* v. *Waldron,* 3 Hill N. Y. 361 ; *Albany Fire Ins. Co.* v. *Bay,* 4 N. Y. 9 ; *Ferry* v. *Laible,* 31 N. J. Eq. 566 ; *Patapsco Guano Co.* v. *Morrison,* 2 Woods, 395 ; *Stokes* v. *Payne, Kennedy & Co.* 58 Miss. 614 ; *Henderson* v. *Blackburn,* 104 Ill. 227 ; *Switzer* v. *Wilvers,* 24 Kans. 384 ; *Cunningham* v. *Blake,* 121 Mass. 333 ; *Hoyt* v. *Jaques,* 129 Mass. 286 ; *Loring* v. *Brodie,* 134 Mass. 453 ; *Wilson, Trustee, et al.* v. *Maryland Life Ins. Co. of Baltimore,* 60 Md. 150.

the power in several of them being a power to sell for reinvestment. Undoubtedly such a power ought to be more strictly construed than a power given to the donee simply for his own benefit. *Norcum* v. *D'Œnch & Ringling*, 17 Mo. 98, 117 ; *Stokes* v. *Payne*, 58 Miss. 614. One of the cases cited, however, is a case where the power was given simply for the benefit of the donee, and where, notwithstanding, it was held that the donee had no authority to mortgage. *Hoyt* v. *Jaques*, 129 Mass. 286. We do not find among the many cases cited for the bank any case which holds that a power to sell authorizes a mortgage. There are a few such cases. *Mills* v. *Banks*, 3 P. Wms. 1 ; *Wayne, Trustee*, v. *Myddleton*, 2 Ga. 383 ; *Williams* v. *Woodward*, 2 Wend. 487, 492 ; but in *Stroughill* v. *Anstey*, 1 De G., M. & G. 635, Lord St. Leonards allows a mortgage under a power to sell only where the estate is settled or devised subject to a particular charge and the mortgage is made to raise the charge. In *Bloomer* v. *Waldron*, 3 Hill N. Y. 361, 367, the propriety of this exception to the rule is doubted, and the ground of the rule is stated as follows, to wit : " There is a substantial difference between raising money by mortgage and sale ; and it is enough to say that a power to raise money by one of these methods puts a negative on the other." See, also, *Butler* v. *Duncomb*, 1 P. Wms. 448, 452 ; *Ivy* v. *Gilbert*, 2 P. Wms. 13 ; *Mills* v. *Banks*, 3 P. Wms. 1.

The difference between a mortgage and a sale is more marked now than it was formerly, and therefore it is more difficult now than formerly to construe a power to sell as including a power to mortgage. Even a chattel mortgage with delivery resembles a pledge more closely than it does an ordinary sale. In *Bloomer* v. *Waldron*, the court also say : " The most we can say is that when the power is to sell, and something is added over and above, showing that the power of sale is not to be taken in its primary sense, but means a power to mortgage, then the donee may act accordingly. The principal may always make his own vocabulary." And to the same effect is the language of the court in *Hoyt* v. *Jaques*, 129 Mass. 286.

· The question then is : Is there anything in the will of Mary R. Burnside which shows that it was her intention that the power to sell should include the power to mortgage ? Undoubtedly the will

evinces a generosity on her part toward her husband, which would
have led her to give a power to mortgage, if it had occurred to her
to give it; but did it occur to her, and if so, did she suppose that
a power to sell included it? We find nothing in the will which
enables us to answer the question affirmatively. She speaks only
of a power to sell and of "such sale or sales." Can we infer a
power to mortgage from the character of the property, taken in
connection with the language of the will? The property consists
of bonds, mortgages, shares of stock, and money on deposit. It
could be as readily sold as mortgaged. We notice only one mat-
ter which merits consideration. It consists in part of money on
deposit. Undoubtedly General Burnside had authority under the
power to draw this money and use it without a sale, for, as the
only purpose of a sale is to convert into money, the law will not
require a sale when the purpose is accomplished without it. If
General Burnside had lived until the Buckner bonds fell due, we
have no doubt that it would have been competent for him to re-
ceive payment and appropriate the proceeds, so far as he needed,
to his own use, without going through the form of selling them,
because selling them, in that event, would be but an idle form,
which the law would not exact. And so, too, if the eighteen bonds
transferred to the bank had fallen due and been collected and ap-
plied by the bank to the payment of General Burnside's indebted-
ness during his lifetime, we think the application would have been
valid, for it would have been the same in legal effect as if General
Burnside had himself collected and so applied them. But why,
it may be asked, if this be so, is not the application by the bank
after his death equally valid? The answer is, because the appli-
cation after his death is no longer his application, the pledge or
mortgage being ineffectual as such for more than his life interest;
and immediately after his death the will carried all of the personal
estate bequeathed, which remained unapplied by him to his use,
over to the legatees in remainder. This is not the conclusion
which, considering the circumstances, would give us the most
satisfaction, but we do not see how we can escape it. If only
a power be given, then only *the* power can be used, and not
another, the donee having no other.

The demurrer of the defendant Manchester will, therefore, be

sustained and the bill dismissed as to him, with costs, and the demurrer of the bank overruled.            *Decree accordingly.*

*Charles Hart & Joseph C. Ely,* for complainant.

*James Tillinghast,* for respondent the Commercial National Bank.

*Colwell & Barney,* for respondent Manchester.