## Mary W. Campbell *v.* Foster Home Association, Appellant.

[Marked to be reported.]

*Mortgage—Power to mortgage—Attorney in fact.*

The rule that a power to sell includes a power to mortgage does not apply to a mere letter of attorney with a naked authority to sell uncoupled with any interest in the land or the fund.

By an instrument in writing the owner of land constituted and appointed another person her true and lawful attorney for her and in her name "to grant, bargain and sell in fee simple all real estate owned by her, including all ground rents, on such terms and for such prices as he may see fit, and to make, execute and deliver all necessary deeds and assurances to the purchasers, and to assign all policies of insurance on said properties or with said ground rents." *Held,* that the attorney in fact had no power to execute a bond and mortgage in the name of his principal.

Letters of attorney are strictly interpreted, and the authority is never extended beyond that which is given in terms, or which is necessary and proper for carrying the authority so given into full effect.

163  609
180  528

163  609
21 SC ²366

163  609
24 SC ³474

163  609
f37SC ⁴419

*Equity—Subrogation—Volunteers.*

Subrogation will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another. It will not arise in favor of a stranger, but only in favor of the party who, on some sort of compulsion, discharges a demand against a common debtor.

An attorney in fact under a letter of attorney giving him a mere power to sell, executed a mortgage in the name of his principal for $7,500 upon land already covered by a mortgage for $6,000. The mortgagee retained six thousand dollars, and paid off the first mortgage, paying over to the attorney the remaining fifteen hundred dollars. *Held*, that the mortgagee, on the second mortgage being declared invalid, had no right to be subrogated to the position of the first mortgagee so as to recover the $6,000 paid in extinguishment of the first mortgage.

Argued March 20, 1894.   Appeal, No. 168, Jan. T., 1894, by defendant, from decree of C. P. No. 4, Phila. Co., June T., 1892, No. 507, on bill in equity.   Before STERRETT, C. J., GREEN, McCOLLUM and FELL, JJ.   Affirmed.

Bill in equity for cancellation of mortgage.

The master, A. J. D. Dixon, Esq., reported as follows:

" The bill and amendments aver:

" That plaintiff is the owner in fee simple of premises No. 1039 Walnut street in the city of Philadelphia.

" That on Dec. 26, 1888, plaintiff executed a letter of attorney to one William B. Robins of said city, as follows: ' Know all men by these presents, That I, Mary W. Campbell, of the city of Philadelphia, widow, do make, constitute and appoint William B. Robins of said city, attorney-at-law, my true and lawful attorney, for me and in my name to grant, bargain and sell, in fee simple, all real estate owned by me, including all ground-rents, on such terms and for such prices as he may see fit, and to make, execute and deliver all necessary deeds and assurances to the purchasers, and to assign all policies of insurance on said properties, or with said ground-rents; and also to assign, transfer, and set over to any purchaser or purchasers thereof a certain bond and mortgage, bearing date the 14th day of September, A. D. 1882, recorded in mortgage book J. O'D., No. 42, page 469, &c., given and executed by Henry Birchell and wife to the Fidelity Insurance, Trust and Safe Deposit Company, trustees, &c., and assigned to me, the said Mary W. Campbell, by assignment bearing date the fifth day

of October, A. D. 1887, recorded in assignment of mortgage book No. 61, page 548, &c., for the sum of $2000, secured upon all that certain lot or piece of ground situate on the east side of Third street, at the distance of ninety-five feet eight inches northward from the north side of Christian street, in the city of Philadelphia; containing in front or breadth on said Third street nineteen feet ten and one-half inches, and extending of that width in length or depth eastward ninety-one feet three inches; and also to assign all of the policies of insurance held as collateral for said mortgage. With power also an attorney or attorneys under him for that purpose to make and substitute, and to do all lawful acts requisite for effecting the premises; hereby ratifying and confirming all that the said attorney or substitutes shall do therein by virtue of these presents.' Duly acknowledged Dec. 26, 1888, and recorded at Philadelphia May 6, 1889, in letter of attorney book No. 71, page 144, &c.

. "That on June 10, 1889, plaintiff executed a subsequent letter of attorney to said William B. Robins, as follows :

"' Know all men by these presents, That I, Mary W. Campbell, do make, constitute, and appoint William B. Robins my true and lawful attorney, for me and in my name to make, execute, and deliver to the Western Saving Fund Society, a bond and mortgage for the sum of $6,000, for three years, with interest at five per cent per annum, on premises No. 1039 Walnut street, in the city of Philadelphia; said bond and mortgage to contain all the covenants and conditions now usually contained in bonds and mortgages, and also to receive the money for said bond and mortgage, and to assign any policies of insurance on said premises to said mortgagees as collateral security, and to make any agreements to extend said mortgage or any other mortgages held by me, with power also an attorney or attorneys under him for that purpose, to make and substitute, and to do all lawful acts requisite for effecting the premises; hereby ratifying and confirming all that the said attorney or substitute or substitutes shall do therein by virtue of these presents.' Duly acknowledged June 10, 1889, and recorded at Philadelphia, June 20, 1889, in letter of attorney book. No. 71, page 408, etc.

"That the said William B. Robins, under the pretended au-

thority of the first recited letter of attorney of Dec. 26, 1888, executed on Dec. 23, 1890, in the name of plaintiff, a ·bond and mortgage for $7,500 on said premises to said defendant, recorded, etc.

" That plaintiff gave no power or authority to said William B. Robins to give any bond for her or to mortgage the said property (except as contained in the second recited letter of attorney), and avers that the said bond and mortgage are not her acts and deeds.

" That if there was any power to mortgage said premises in the first letter of attorney of Dec. 26, 1888, it was revoked by the giving of the subsequent letter of attorney of June 10, 1889, and that, therefore, no power or authority existed in said Robins to make any mortgages upon said premises except under and in accordance with said last mentioned letter of attorney.

" That plaintiff had no knowledge of said action of William B. Robins in giving said bond and mortgage until a few days before filing her bill ; that she has not received the consideration money of said bond and mortgage, but that the said William B. Robins has appropriated the same to his own use.

" That previously to the making of said bond and mortgage to defendant, the said William B. Robins, under the pretended authority of said first recited letter of attorney, made two other bonds and mortgages of the said premises to the Western Saving Fund Society ; one dated June 20, 1889, for $6,000, recorded in mortgage book G. G. P., No. 480, page 22 ; and the other dated May 9, 1890, for $500, recorded in mortgage book G. G. P., No. 597, page 71 ; these two mortgages were satisfied of record Dec. 31, 1890, after the making of the mortgage ·to defendant ; and that the fact that these mortgages to the Western Saving Fund Society had been made by the said Robins, claiming to act under said first letter of attorney, was known to defendant at the time the mortgage for $7,500 was made to it by the said Robins.

"That even if the first-mentioned letter of attorney of Dec. 26, 1888, was sufficient to authorize said William B. Robins to mortgage the said premises in the first instance, the power and authority to do so was exhausted by the making of the said mortgages to the Western Saving Fund.

" The prayers of the bill were : (1) For a decree that said bond

and mortgage were not the acts of plaintiff, and that they be delivered up to be canceled, and marked satisfied of record. (2) That an injunction may issue restraining defendant from proceeding against plaintiff upon said bond and mortgage. (3) General relief.

"The answer admits plaintiff's ownership of said property; the execution of said letters of attorney; the execution of said bond and mortgage; avers that the authority of Robins was real and not pretended, and that the said bond and mortgage are the acts and deeds of plaintiff; asks that the want of knowledge on the part of plaintiff be proved if material; and avers that some part of the moneys obtained by Robins upon the bond and mortgage was appropriated to the benefit of the plaintiff; admits the execution of the two prior mortgages to the Western Saving Fund, but denies that Robins acted only under the authority alleged in making said two mortgages, and avers that said mortgage of $6,000 was made by Robins acting, inter alia, under the second letter of attorney of June 10, 1889; avers that said two mortgages of $6,000 and $500 were valid incumbrances upon said premises, and that the moneys received from defendant upon the bond and mortgage for $7,500 were appropriated in and about the payment of said two mortgages, and claims to be entitled, in any event, to hold said mortgage of $7,500 to the extent of said appropriation; denies that there was any revocation or exhaustion of the first letter of attorney (of Dec. 26, 1888), and prays to be dismissed with costs.

### "FINDINGS OF FACT.

"From the admissions in the pleadings and the proofs produced, the master finds the facts to be as follows:

"The plaintiff, Mary W. Campbell, being the owner in fee simple of premises No. 1039 Walnut Street, Philadelphia, made and executed the letters of attorney of Dec. 26, 1888, and June 10, 1889, as set out in the pleadings. The said William B. Robins claiming to act as attorney in fact of Mary W. Campbell, thereupon made and executed in her name bonds and mortgages of her said premises No. 1039 Walnut street, as follows:

"1. June 20, 1889. Bond and mortgage to the Western Saving Fund for $6,000; reciting both letters of attorney; satisfied of record December 31, 1890. (This bond and mortgage were

produced, and upon inspection the recital of the second letter of attorney appeared to have been inserted in both bond and mortgage, but was not noted as having been so inserted before execution.)

" 2.  May 9, 1890.   Bond and mortgage to the Western Saving Fund for $500 ; reciting the power as one of June 20, 1889, recorded in letter of attorney book No. 71, page 144 (the date of the second letter of attorney, but the record of the first letter of attorney of Dec. 26, 1888) ; satisfied of record Dec. 31, 1890.

" 3.  Dec. 23, 1890.   Bond and mortgage to defendant (being the subject of this suit), reciting the first letter of attorney.

" 4.  July 25, 1891.   Bond and mortgage to the No. 2 Assistance Building and Loan Association for $1,500.   (This is still subsisting and is the subject of a similar proceeding before the master.)

" The. plaintiff, Mary W. Campbell, had no knowledge of the making of any mortgages in her name by William B. Robins, until she received the information from her counsel, Thomas Hart, Jr., Esq., in a letter from him dated June 20, 1892.

" No part of the moneys obtained by Robins upon said bond and mortgage for $7,500 reached the hands of plaintiff.

" Of the $7,500, the amount of said mortgage, the sum of $6,000 was appropriated to the payment of the aforesaid mortgage of the Western Saving Fund (which is admitted to have been a valid incumbrance on said premises) ; $253.07 to the payment of interest thereon and satisfaction fee ; $500 to the payment of the other aforesaid mortgage of the Western Saving Fund ; seventeen dollars and six cents to the payment of interest thereon and satisfaction fee; $230.88 to the payment of taxes for 1890 on said premises ; three dollars and fifty cents to recording, and the balance, $494.99, was paid to William B. Robins, attorney, who appropriated the same to his own use.

"OPINION.

" The following questions arise in this case :  (1) Whether under the letter of attorney of Dec. 26, 1888, there was any power to mortgage.   (2) Whether the giving of the special letter of attorney of June 10, 1889, revoked the former power, not only as to the property therein named, No. 1039 Spruce [sic] street, but also as to all the other properties.   (3) Whether

both the said letters of attorney were not exhausted by the making, with the knowledge of the present mortgagees, of the former mortgages of the several properties.    (4) The applicability of the doctrine of subrogation.

" Upon the first and main point, we are confronted at the outset with a line of cases in Pennsylvania in which the general proposition that a ' power to sell includes a power to mortgage ' is affirmed and reaffirmed in the most positive terms.    These cases are: Lancaster v. Dolan, 1 Rawle, 231 ; Gordon v. Preston, 1 Watts, 385 ; Duval's Ap., 38 Pa. 112; Penna. Co. for Ins. on Lives etc. v. Austin, 42 Pa. 257 ; Zane v. Kennedy, 73 Pa.182 ; Watts's Appeal, 78 Pa. 370 ; Maurer's Appeal, 86 Pa. 380 ; Wurfflein v. Haines, 14 W. N. 76, and 15 W. N. 28 ; McCreary v. Bomberger, 151 Pa. 323."

After reviewing these cases the master continued :

" The foregoing are all the cases in Pennsylvania on the subject ; a careful examination of them reveals the fact that it is only under the existence of certain circumstances that the assertion ' A power to sell includes a power to mortgage ' becomes a ' rule of property ' in Pennsylvania.    Two of them are cases of corporations ; the others are all cases of trusts, some testamentary, others created by deed ; they are cases of ancillary powers, powers for the purpose of carrying out or aiding in the object for which the trust was established.    The present case, on the other hand, is that of an agent, of course with no trust, with no right to hold this property or do anything with the purchase money in case of a sale, but to hand it over to his constituent.    Can it be said that he has an implied power to mortgage because of the authority of cases based upon a trust, based upon a discretion in the donee of the power as to the means of raising money, when the object and purpose of the trust was to raise money, and who was also to be the hand which would devote the money subsequently to the purposes of the trust, either to pay debts or legacies or something of that nature.

" While the cases in Pennsylvania, as will be shown, have gone further than any others upon the subject of an implied power to mortgage, they have not gone so far as to say that an agent authorized by letter of attorney to sell real estate has power to mortgage it, and it is submitted that their authority should not be extended by implication to cover such a proposition.

" The case of Mills v. Banks, 3 P. Wms. 9, decided in 1724, has been cited as authority for the general principle that a power to sell includes a power to mortgage.   Lord Chancellor MAC-CLEFIELD said in his opinion, ' a power to sell implies a power to; mortgage, which is a conditional sale,' (i. e., because it is a conditional sale ?) but gave no attendant authority for the statement nor is any to be found.   This case has been distinctly departed from in a line of cases, viz.: Ball v. Harris, 4 Myl. & C. 264;  Haldenby v. Spofforth, 1 Beav. 390; Stroughill v. Anstey, 1 De.G. M. & G. 635;  Page v. Cooper, 16 Beav. 396; DeVayne v. Robinson, 24 Beav. 86; Dimmock's Case, 52 L. T., N. S. 494, covering a period from 1838 to 1885, which have settled the. law on the subject in England to be that, when the donee of a power to sell has imposed upon him other rights and duties, the performance of which involves the propriety or necessity of borrowing money, as in case of a trustee to create charges or raise portions, etc., equity will, in aid of such other purposes, construe a power to sell as a power to mortgage, when exercised in support of the trust."

After citing Ferry v. Laible, 31 N. J. Eq. 566 ;  Loebenthaler v. Raleigh, 36 N. J. Eq. 169 ;  Hoyt v. Jaques, 129 Mass. 286, and Kent v. Morrison, 153 Mass. 137, the master continues : " I have referred to the English cases and those of New Jersey and Massachusetts, not for the purpose of showing that the law of Lancaster v. Dolan should not be followed in kindred cases, but merely to show that that doctrine should not be extended to include a case like the present one, a case that has not yet arisen in Pennsylvania, because the original authority cited for the decision in Lancaster v. Dolan [Mills v. Banks, supra] has since been departed from, and its doctrine limited and applied to a certain class of cases only.

" The text-writers are unanimous in their statements of the law upon this point."

After quoting paragraphs from the following text-writers : Hill on Trust, *475 ; 1 Sugden on Vendors, 591 ; Sugden on Powers, 425 ;  Ib., ch. 8, § 3, pl. 4 ;  Chance on Powers, § 2563 ; 4 Kent, Com. *147, 331 ; 2 Washb. R. Prop. 708, pl. 5 ; 1 Fisher on Mortg., p. 285 ; 1 Powell on Mortg. 61 ; 1 Jones on Mortg. § 129 ;  2 Perry on Trusts, § 768 ; 2 Spence on Eq. Juris. 369 ; 1 Lewin on Trusts, *426, the master proceeds :

" The law governing the construction of letters of attorney is properly a branch of the law of principal and agent, and the doctrine of Pennsylvania law upon the subject of the powers of agents is altogether opposed to the proposition that a power to an agent to sell and convey real estate empowers the agent to mortgage the same.   There is no analogy between the cases of powers under wills and deeds, and under letters of attorney. Letters of attorney should receive a strict interpretation, and the authority should not be extended by intendment beyond what is given in terms or is absolutely necessary for carrying the authority into effect, and the authority must be strictly pursued.

" ROGERS, J., in Devinney v. Reynolds, 1 W. & S. 328, says : ' An agent constituted for a particular purpose and under a limited power cannot bind his principal if he exceeds his power. A special power must be strictly pursued, and whoever deals with an agent constituted for a special purpose deals at his peril when the agent passes the precise limits of his power.'

" Directly in this line are the following Pennsylvania cases : Peck v. Harriott, 6 S. & R. 145 ; Strohecker v. Farmers' Bank, 6 Watts, 96 ; Same v. Same, 8 Watts, 188 ; Heffernan v. Addams, 7 Watts, 116 ; Baring v. Peirce, 5 W. & S. 548.

" The distinction between powers under wills and deeds and under letters of attorney is recognized by Sugden, Powers, chapter 6, 255.

" The power to mortgage can only be placed in the letter of attorney of December 26, 1888, by construction ; it is not there in terms ; nor is it at all a necessary implication (Peck v. Harriott, supra) ; no one will say that the power to raise money on mortgage of a property is necessary in order to sell it.   The application of the principles of law governing the interpretation of powers between a constituent and an agent strongly disfavors the contention of the defendant in this case.

" Although no case has arisen in Pennsylvania upon the question whether an attorney in fact with power to sell real estate may mortgage it, that precise point has been decided in other states, in each instance against the right to mortgage : [quoting Wood v. Goodridge, 6 Cush. 117 ; Morris v. Watson, 15 Minn. 212 ; Jeffrey v. Hursh, 49 Mich. 31, affirmed in Hursh v. Jeffrey, 58 Mich. 246 ; Hubbard v. Congregation, 34 Iowa,

31; Switzer v. Wilvers, 24 Kan. 384; Nixon v. Hyserott, 5 Johns. 58; Coondoo v. Watson, L. R. 9 Ap. Cas. 561.]

" The text-books agree in the statement of law that a power to sell given to an agent does not confer upon him the power to mortgage or pledge : Mechem on Agency, § 323; Story on Agency, § 68; 1 Fisher's Law of Mortgages, page 260; 1 Jones on Mortgages, § 129; Wharton on Agency, § 193; Fitch, Law of Real Est. Agency, page 140.

" There is another distinction between this case and the Pennsylvania cases already referred to. In each of them the money raised or received by the trustee was properly received ; he who made the mortgage had a right to give a bond accompanying the mortgage for the money given him. But how can it be said that there was any authority given to William B. Robins to borrow money for the plaintiff or to give any obligation binding her.

" A mortgage in Pennsylvania, while in form a conveyance, is nothing more nor less than a security for money loaned or for the performance of some other obligation : Presbyterian Corporation v. Wallace, 3 Rawle, 109.

" If the bond which the mortgage secured is bad, if there is no debt, no legal obligation to be secured, how can the mortgage securing a worthless bond be good? And here it will be seen how little analogy there is between cases quoted supra and the present one. In the former the donee of the power was empowered to raise money and, of course, to give his obligation as a fiduciary. It was because he was empowered to sell in order to raise money to pay debts, legacies, or charges, that it was held he might raise the money by way of mortgage. The power was to sell to raise money. The implicit power to mortgage was only the means of raising the money. See as instances : Duval's Appeal, where the mortgage secured money which the trustee borrowed to pay the decedent's debts, one of the objects of the trust and of the power to sell. And Penna. Co. v. Austin, where it was said that the trustee had power to raise money for the legitimate purposes of the trust.

" It will be seen, too, how little analogy there is between cases of executors exercising a power of sale and the present case, when the cases upon the general powers of executors are considered.

"An executor having the power of absolute disposition of the testator's assets, for the general purposes of the will, may, in the exercise of a sound discretion, supposing the will does not peremptorily require an absolute sale, raise money required for the estate by a mortgage of the assets : 2 Williams's Executors, 840.

"Of course the estate is bound for a loan made in such a case ; and so when he is empowered to sell real estate for the purpose of raising money the obligation which he gives for money raised to pay legacies or debts is a good one.  Where, however, the purpose of the executor is to pay his own debt, both the obligation, as against the estate, and the pledge of the testator's assets are bad.

"An executor cannot make a valid sale or pledge of the assets of his testator for the payment of his own or the debts of a third person : Miller v. Ege, 8 Pa. 356 ; Bayard v. Bank, 52 Pa. 232 ; Martin's Ap., 13 W. N. 167.

"The present case is like an executor pledging the testator's assets or mortgaging real estate, which he is empowered to sell, for his own debt.  In such cases the pledge or mortgage is bad, because the purpose is bad.  So here the mortgagee knew the agent had no authority to borrow money for the constituent, and that the obligation which he gave must be worthless.

"A fiduciary with an unlimited power of sale is practically the owner of the estate for every purpose.

"In Pennsylvania a mere naked authority to executors to sell real estate is taken to give them the same power and authority over the estate, for all purposes of sale and conveyance, as if the same had been thereby devised to them to be sold.  Act Feb. 24, 1834, § 13, Purd. 521, pl. 78.  In all such cases the executor can make a binding obligation on the part of the estate for money borrowed for its purposes.

"But where can a case be found deciding that a person having a power to sell real estate, but confessedly no power to borrow money on behalf of the maker of the instrument, and, therefore, no power to oblige him to pay any money, may, under the power to sell, validly mortgage the real estate of the other to secure the worthless obligation ?

"In Wood v. Goodridge, supra, it was pointedly remarked that the power did not in terms give the attorney power to borrow money and bind his principal by a promissory note.

"In Jeffrey v. Hursh, supra, the court said that there could be no implication from an authority to sell lands that the constituent intended that the agent might charge him with the duties and responsibilities of a mortgage.

"See Mechem on Agency, §§ 389–391 : ' The power of binding by promissory negotiable notes can be conferred only by the direct authority of the party to be bound. Such a power will be strictly construed. It will only be implied where it is practically indispensable to accomplish the object.'

"Upon the second point, it was contended by counsel for plaintiff that the general power of December 26, 1888, to sell, was, even if it could be held to authorize a mortgage of plaintiff's real estate, revoked by the power of June 10, 1889, specially providing for a mortgage of one piece of real estate only to a certain person for a certain sum, the latter power having been recorded before the making of all the mortgages in question except that of $1,000 to Amelia Priestman upon June 13, 1889 ; citing Morgan v. Stell, 5 Binney, 305.

"And upon the third point, it was argued that, even if the power of Dec. 26, 1888, to sell real estate was sufficient to authorize the attorney to mortgage the same, that power had, previously to the making of the mortgages in five of these cases, viz., those of the Foster Home Association, Margaret C. Agnew, the Real Estate Title Company, and the Assistance Building and Loan Associations Nos. 1 and 2, been exhausted by the making of former mortgages of the same property, the fact of the making of the preceding mortgages having been known to the mortgagees now claiming : citing Slifer v. Beates, 9 S. & R. 166.; Elliott's Case, 5 Whart. 523 ; Asay v. Hoover, 5 Pa. 21 ; Maurer's Appeal, 86 Pa. 380 ; Denny v. Lyon, 38 Pa. 98 ; Swift's Appeal, 87 Pa. 502 ; Saunders v. Evans, 8 H. L. Cas. 720 ; Sugden on Powers, ch. 8, § 3, pl. 10.

"One other important point was argued before the master. It was claimed by counsel for defendant that, supposing their contention as to the power to mortgage to be erroneous, a certain amount of the money obtained by Robins went to pay good obligations in the shape of liens or incumbrances on the property of plaintiff, and that, therefore, defendants were entitled to be subrogated to the extent of that amount, claimed to be $7,446.75 in the six cases, and that the mortgages should

be held available for the purpose of enabling defendants to get back that money. . . .

"The right of subrogation has been called the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it: Beach on Modern Equity and Jurisprudence, § 800.

"And in the same authority, at section 801, it is said that a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. In such a case the payment operates as the absolute discharge of the debt so paid.

"Maurer's Appeal, 86 Pa. 380, relied upon by defendants, was somewhat different from this case. In the first place, Judge SHARSWOOD says : ' The plaintiffs loaned their money in good faith, in the belief that the deed of trust was revoked, and that the mortgagors had a perfect right to make the mortgage.' But the great distinction is that the married woman herself received the money from the plaintiffs and herself applied it to the payment of the preceding mortgage. In the present case the plaintiff had nothing to do with the payment, nor any knowledge on the subject. It is the case of a volunteer loaning money on a worthless security, some of which went to pay off a good mortgage.

"It is held in Webster & Goldsmith's Appeal, 86 Pa. 409, that while subrogation is founded on principles of equity and benevolence and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer who, without any duty, moral or otherwise, pays the debt of another. It will not arise in favor of a stranger, but only in favor of a party who on some sort of compulsion discharges a demand against a common debtor. These principles do not apply in favor of volunteers ; they can obtain the right of substitution only by contract: Mosier's Ap., 56 Pa. 76 ; Hoover v. Epler, 52 Pa. 522; Wallace's Est., 59 Pa. 406.

"One who discharges an incumbrance upon property which he has no interest in having relieved, is not thereby subrogated to the rights of the holders of the incumbrance : Moody v. Moody, 68 Me. 155; Wolff v. Walter, 56 Mo. 292.

"And the loaning of money to discharge a lien does not subrogate the lender to the rights of the lien holder: Beach on Modern Equity Jurisprudence, § 801, and cases cited in note 2.

" Voluntary payment of the mortgage debt by one who sustains no relation whatever to the property cannot operate to subrogate him to the rights of the holder of the obligation: Beach on Modern Equity Jurisprudence, § 807.

" So one who loans money to another to pay the mortgage cannot claim the benefit of subrogation to the rights of the mortgagee: Van Winkle v. Williams, 38 N. J. Eq. 105.

" The Real Estate Title Company, who insured the defendants' titles in this and the other cases, and by whom the settlements were made, acted as agent of the defendants, and payment by it of the preceding mortgage and of taxes was payment by the defendants.

" As to any rights existing in Robins to act as agent for plaintiff there was no evidence before the master, save and excepting only as contained in the letters of attorney of December 26, 1888, and June 10, 1889.

" In Maurer's Appeal, supra, the married woman herself received the money and paid the mortgage, and herself applied it to her own use; it was because the money was applied to her own use by her that the plaintiff's claim was sustained."

After citing McCleary's Ap., 20 W. N. 547, the master concludes:

" Upon the whole case the master is of opinion that under the letter of attorney of Dec. 26, 1888, there was no power in William B. Robins to make any mortgage of plaintiff's real estate; and further, that, while defendants may or may not have rights in an action at law in regard to the moneys paid by them in discharge of good incumbrances and liens upon plaintiff's real estate, the principles of subrogation cannot be successfully invoked by them in the premises; and recommends that a decree be made in conformity with the prayers of the bill."

Exceptions to the master's report averred that the master erred in reporting (1) that there was no power to mortgage under the letter of attorney dated Dec. 26, 1888; (2) that the various mortgages were not validly executed; (3, 4) were not valid liens; (5) that defendant was not entitled to subrogation; (6, 7) decree.

The court dismissed the exceptions in the following opinion, by THAYER, P. J.:

" The principles which are applicable to the determination of

this case are those which relate to the law of agency, and the cases upon the subject of power to sell contained in deeds of trust, wills or other instruments where the donee of the power has the ownership or virtual control of the property over which the power is to be exercised, or where a power has been given by such an instrument to a trustee for the purpose of effecting a conversion of the property or of raising a fund for a cestui que trust, have no application. The question here is not the construction of a power given to a donee, devisee or grantee, or to a trustee for appointment, or for the purpose of defining the limitations of an estate, or regulating its future control or management. It is, on the contrary, a question which relates simply to the construction of a written authority given by the owner of the property to a naked agent appointed for a specific purpose, with no interest in the subject of the power and no authority beyond it either expressed or implied. A, being desirous of changing an investment, employs B to sell his house. Would not any one in the place of A be justly astonished if he was informed the next day that B had not sold his house but mortgaged it; that he had not found a purchaser, but had placed an incumbrance upon the property, and that the owner was not to get the price of the property which he had directed to be sold, but would thereupon be bound by a solemn obligation to pay the interest upon a loan, which he had never authorized, and did not want, but which had been securely fastened upon his property, and that he was to be bound for its payment by a bond which he had never given any authority to any one to sign or seal for him. This is the whole case so far as it relates to the construction of the letter of authority given by the plaintiff to William B. Robins, December 26, 1888. That a naked agent who is authorized by a letter of attorney to sell for his constituent has no authority to mortgage, is plain alike upon principles of reason, and by all the authorities upon the subject. They have been diligently collected and clearly stated by the learned master in his very able and lucid printed report in this case. So that it is quite unnecessary for me to recapitulate them here. The text-writers are unanimous on the same points.

"Indeed, no other rule could be tolerated without introducing the greatest confusion and injustice into business affairs.

It is entirely unnecessary, therefore, for me to go through the long lines of Pennsylvania cases, commencing with Lancaster v. Dolan, in 1 Rawle, and ending with McCreary v. Bomberger, in 151 Pa. State Reports. The master has analyzed and dissected each one of them with great skill and perspicuity in his report, for the purpose of showing the fundamental difference between those cases and the present case; but it was, in my opinion, an unnecessary labor, for these cases have no application to the case in hand. They relate to a totally different subject, viz., the construction of powers given to devisees, or trustees for devisees, to enable them to raise a fund for the accomplishment of a specific purpose contemplated by the donor of the power—a purpose as readily effected by a mortgage as by a sale. They are not at all applicable to the case of a mere agent employed by the owner for the sole purpose of making a sale, with no other purpose in view and no authority whatever beyond that specific purpose. The concise phrase, which has grown into a convenient legal apothegm, 'a power to sell is a power to mortgage '—is applicable only to the doctrine of power as applied to cases of the kind which I have already mentioned, and even there has its exceptions and limitations, but it has no legitimate or proper application to the construction of a letter of attorney given to a mere agent employed for no other purpose than to sell a house for the owner, and not authorized, either by the words or intendment of the instrument, to do anything else. It might, with as much justice and propriety, be applied to a letter of attorney authorizing an agent to sell stocks, and for the purpose of justifying him in pledging the stocks, contrary to his orders, instead of selling them.

" We are, therefore, of opinion that under the letter of attorney of December 26, 1888, from Mrs. Campbell to William B. Robins, he had no authority whatever to mortgage the Walnut street house. That Robins knew that he had no such authority is evident from the fact that when, subsequently to the execution of the letter of attorney, he conceived the idea of obtaining a loan by mortgage upon the property from the Western Saving Fund he procured from Mrs. Campbell another power of attorney (June 10, 1889), which specifically authorized him to make and deliver a bond and mortgage to the Western Saving Fund for $6,000.

"If the defendants in the present case had been equally careful with the Western Saving Fund in demanding of the agent before making the loan the production of an explicit power of attorney from Mrs. Campbell, authorizing it, there would have been no occasion for the present suit, and the defendants would have suffered no loss.  They were very careless in lending Robins the money without sufficient proof of his authority from Mrs. Campbell to borrow it.  As it was, the defendants acquired no title to the property, and no rights against the plaintiff by the bond and mortgage executed by Robins to them December 23d, 1890, any more than if they had been forgeries, from which, indeed, they are not far removed, for it is clear that Robins had no right to execute them in her name.

"Upon the second point argued, viz., the claim of the defendants to be subrogated to the former rights of lien claimants whose debts had been paid and satisfied out of the fund fraudulently raised by Robins, we are unable to see, after much consideration given to the subject and a careful examination of the authorities, that the claim has any legal foundations upon which to rest.  The Real Estate Title Company who insured the defendant's title, and by whom the settlement was made, were, as the master reports, the agents of the defendants in paying off the preceding mortgage and taxes.  They were virtually payments made by the defendants, who were mere volunteers paying off incumbrances upon a property to which they thought they had a good title as mortgagees, but to which they had none.  There was no privity whatever between them and Mrs. Campbell, who did not receive a cent of the money they loaned to Robins, and who was entirely ignorant of the whole transaction, the loan having been fraudulently concocted by Robins, who appropriated the net proceeds to his own use.  The defendants occupy towards the plaintiff the attitude of a stranger interfering without her knowledge or consent with her property for what they supposed to be for their own best interests.  In making these payments they were mere volunteers, for there was neither privity of estate, privity of contract, nor privity of any kind between them and the plaintiff, and the law is well settled that the principles of subrogation in equity do not apply in favor of volunteers.  Voluntary payment of a mortgage debt by one who sustains no legal relation to the property or

the owner cannot operate to subrogate him to the rights of the former holder of a satisfied mortgage. It has been decided that even one who loans money to another to pay the mortgage has no claim to subrogation to the right of the mortgagee. A good illustration of the principle is the familiar case of a surety who pays the debt of his principal and becomes thereby entitled to the securities of the creditor; a stranger, or one standing in no legal relation to the debtor, would have no such right. I have not been able to find any authority which would justify the claim of the defendants to be subrogated to the former rights of the owners of the satisfied mortgage and liens in this case. Maurer's Appeal, 86 Pa. 380, much relied on by the defendants, was a totally different case from the present. There the married woman herself received the money and herself applied it to the payment of the preceding mortgages. In the present case the plaintiff had nothing to do with the payment and no knowledge of it whatever. The present case is the case of a volunteer loaning money on a worthless security given by a third party in the perpetration of a fraud which he had planned for his own benefit, and then, without the knowledge of the owner, paying off an incumbrance to increase its own security. It is unnecessary to go through the cases upon this subject. They have been collected and discussed by the master with the same diligence and ability which characterizes the rest of his report."

The opinion further cited: Webster & Goldsmith's Ap., 86 Pa. 409; Mosier's Ap., 56 Pa. 76; Maurer's Ap., 86 Pa. 409, and McCleary's Ap., 20 W. N. 547. [See 2 Dist. R. 845.]

*Errors assigned* were (1–7) dismissal of exceptions, quoting them; (8) entry of decree; (9) in not dismissing bill; (10) refusal of subrogation.

*John G. Johnson*, for appellant.—The power given to Robins to sell included a power to mortgage: Lancaster v. Dolan, 1 Rawle, 231; Zane v. Kennedy, 73 Pa. 182; Maurer's Ap., 86 Pa. 384; Wurfflein v. Haines, 14 W. N. 76; Mills v. Banks, 3 P. Wms. 9; McCreary v. Bomberger, 151 Pa. 323.

The doctrine which was laid down in Lancaster v. Dolan, and which has been so frequently reiterated, rests upon an inter-

·pretation of the meaning of words.   It was held ·that the greater power included the less, and that a power to make a conveyance in fee simple included every conveyance in fee simple as well with, as without, a condition of defeasance.   The contrary decisions from other states were made in states where the rule of Lancaster v. Dolan, even in the case of a deed or will, was not conceded to be correct.

It was urged, before the master, that our Pennsylvania cases were those in which the power was annexed to an estate, and that the interpretation of the meaning of the power should be different where, as in a letter of attorney, there was no estate. The cases, however, do not sustain this distinction.   In the last one we have cited there was no estate in the executrix.   Nothing more than a power was conferred upon her.

It was also said that our cases have been decided in the past in adherence to the Lancaster v. Dolan rule, because the power was given for the purpose of raising money.   We can see no warrant for this assertion.   In McCreary v. Bomberger, and in Wurfflein's Appeal, the power was not conferred for the purpose of raising money, but for the ·purpose of making a change of investment.   It can hardly be supposed that a power there given, as in this case, for the purpose of changing investments, was supposed by the testatrix to confer a power to create an indebtedness and to secure the same by an incumbrance.   This court, however, disregarded all considerations of the reason which moved the testatrix to confer the power, and interpreted the words by the light of its past decisions.   It deemed it more important to sustain a rule of property·than to make effectual a possible special intent.         . .

Where money is paid by mistake, not officiously nor by way of mere intermeddling, in liquidation of the debt of another, by one who takes as security therefor a mortgage believed to be executed on behalf of such other, a chancellor, when asked to order cancellation of the latter, will grant relief only on condition of subrogating the person thus paying such debt to the position of the original creditor : Peters v. Florence, 38 Pa. 198 ; Aldrich v. Cooper, 2 L. Cas. Eq., p. 289 ; Mosier's Ap., 56 Pa. 80 ; Cottrell's Ap., 23 Pa. 294 ; McCormick v. Irwin, 35 Pa. 117 ; Iron City Tool Works v. Long, 44 Leg. Int. 28 ; 2 Greenl. Ev., § 14, p. 111 ; Snelling v. McIntyre, 6 Ab-

bott, N. C., N. Y. 469; Sidener v. Pavey, 77 Ind. 241; Sheldon on Subrogation, 2d ed. § 361 *a*; Bright v. Boyd, 1 Story, 478; Everston v. Bank, 33 Kans. 352; Hammond v. Barker, 61 N. H. 53; Payne v. Hathaway, 3 Vt. 212; Gans v. Thieme, 93 N. Y. 225; Dixon on Subrogation, 165; Bolman v. Lohman, 74 Ala. 507; Twombly v. Cassidy, 82 N. Y. 155; 1 Jones on Mortgages, § 874 *c*; Milholland v. Tiffany, 64 Md. 455; Keener on Quasi Contracts, 388; Graff's Est., 139 Pa. 76; 2 Beach, Equity Jur. 869; Bank v. Epstin, 44 Fed. R. 404; Wallace's Est., 59 Pa. 405; Hoover v. Epler, 52 Pa. 524; Building Society v. Cunliffe, L. R. 22 Ch. D. 61; Wenlock v. River Dee Co., L. R. 19 Q. B. D. 155; Maurer's Ap., 86 Pa. 380.

*Thomas Hart, Jr., John G. Lamb* with him, for appellee.— The doctrines of Pennsylvania law upon the subject of the powers of agents are altogether opposed to the proposition that a power to an agent to sell and convey real estate empowers the agent to mortgage the same. There is no analogy between the cases of powers under wills or deeds and under letters of attorney: Peck v. Harriott, 6 S. & R. 145; Strohecker v. Bank, 6 Watts, 96; Heffernan v. Addams, 7 Watts, 116; Devinney v. Reynolds, 1 W. & S. 328; Baring v. Pierce, 5 W. & S. 548; Sugden, Powers, p. 255.

The power of attorney of Dec. 26, 1888, conferred on Robins no power to borrow money for plaintiff and give any obligation binding her therefor. The bond for $7,500 given by the attorney to appellant was not good as against appellee. The mortgage given to secure the same was therefore also void: Presbyterian Corporation v. Wallace, 3 Rawle, 109; Thomas's Ap., 30 Pa. 378; Wilson v. Schoenberger's Exrs., 31 Pa. 295; Rice v. Southern Pa. I. & R. Co., 9 Phila. 294; Lance's Ap., 112 Pa. 456; Biddle v. Hall, 99 Pa. 116; Brigham v. Potter, 14 Gray, 522; Wearse v. Peirce, 24 Pick. 141; Hannan v. Hannan, 123 Mass. 441; Heburn v. Warner, 112 Mass. 271; Miller v. Ege, 8 Pa. 356; Bayard v. Bank, 52 Pa. 232; Martin's Ap., 13 W. N. 167; Bell v. Bank, 131 Pa. 318; Mechem on Agency, § 389.

There is no case anywhere which decides that an attorney in fact, with power to sell and convey real estate, may mortgage

the same.   On the contrary, every case in which that question has arisen is the other way : Wood v. Goodridge, 6 Cush. 117 ; Morris v. Watson, 15 Minn. 212 ; Jeffrey v. Hursh, 49 Mich. 31 ; Jeffrey v. Hursh, 58 Mich. 246 ; Hubbard v. Congregation, 34 Iowa, 31 ; Switzer v. Wilvers, 24 Kan. 384 ; Nixon v. Hyserott, 5 Johns. 58 ; Borel v. Rollins, 30 Cal. 408 ; Phelps v. Harris, 101 U. S. 370 ; De Bouchot v. Goldsmid, 5 Ves. *211 ; Coondoo v. Watson, L. R. 9 Ap. Cas. 561 ; Mechem on Agency, §§ 318, 321, 323 ; Story on Agency, § 68 ; 1 Fisher's Law of Mortgages, 260 ; 1 Jones on Mortgages, § 129 ; Whart. on Agency, §§ 193, 746 ; Fitch's Law of Real Est. Agency, 140.

But in this case the power to sell is so limited in terms that there is no room for the implication of a power to mortgage, supposing it can ever be implied in case of an agency to sell : R. R. v. Nav. Co., 36 Pa. 204 ; Horwitz v. Norris, 49 Pa. 213 ; Wickersham v. Savage, 58 Pa. 365 ; Bradley v. R. R., 36 Pa. 151 ; Pepper's Ap., 120 Pa. 235 ; Perry on Trusts, § 783 ; Morrill v. Cone, 22 How. 75 ; Jenkins v. Funk, 33 Fed. R. 915 ; Deputron v. Young, 134 U. S. 241.

The line of Pennsylvania cases, commencing with Lancaster v. Dolan, does not contradict the foregoing propositions, and furnishes no ground for the contention that a power to an agent to sell and convey real estate empowers the agent to mortgage the same.   See, in addition to the cases cited by the master : R. R. v. Baab, 9 Watts, 458 ; Stichter v. R. R., 11 W. N. 325 ; Millvale Boro. v. Evergreen Ry., 131 Pa. 1 ; Trans. Co. v. Pullman Co., 139 U. S. 50 ; Ball v. Harris, 4 Myl. & C. 264.

The rule of the Pennsylvania cases should not be extended. It should not be applied to cases of a different character, for the additional reason that the original authority cited in Lancaster v. Dolan was misapplied, and because it has since been disapproved of in England and other states, and its doctrine is now limited and applied to a certain class of cases only : Ball v. Harris, 4 Myl. & C. 264 ; Haldenby v. Spofforth, 1 Beavan, 390 ; Stroughill v. Anstey, 1 De G. M. & G. 635 ; Page v. Cooper, 16 Beav. 396 ; Devayne v. Robinson, 24 Beav. 86 ; Dimmock's Case, 52 L. T., N. S. 494 ; 31 Am. Law Reg. & Rev., p. 17 ; Ferry v. Laible, 31 N. J. Eq. 566 ; Loebenthaler v. Raleigh, 36 N. J. Eq. 169 ; Hoyt v. Jacques, 129 Mass. 286 ; Kent v. Morrison, 153 Mass. 137 ; 2 Perry on Trusts, 768 ; 4

Kent's Com. 147 ; 2 Washb. R. Prop. 708 ; 1 Powell on Mtgs.
61 ; 1 Jones on Mtgs., § 128 ; 2 Spence, Eq. Juris. 369 ; 1 Lewin
on Trusts, 426.

The power was exhausted: Slifer v. Beates, 9 S. & R. 166 ;
Ellitt's Case, 5 Whart. 524 ; Asay v. Hoover, 5 Pa. 21 ; Mau-
rer's Ap., 86 Pa. 380 ; Denny v. Lyon, 38 Pa. 98 ; Swift's Ap.,
87 Pa. 502.

Defendant had no right to subrogation : Beach on Eq. Juris.
§ 798 ; Sheldon on Subrogation, §§ 1, 240, 241 ; Evans v. Dun-
can, 4 Watts, 24.

One cannot by voluntarily paying money or rendering ser-
vice for another, not having been requested so to do, make that
other his debtor, or subrogate himself to the right of the cred-
itor : Homestead Co. v. R. R., 134 Mass. 82 ; Moody v. Moody,
68 Me. 155 ; Hoover v. Epler, 52 Pa. 522 ; R. R. v. Dickey,
131 Pa. 93 ; Parker's Ap., 8 W. & S. 449 ; Wallace's Est., 59
Pa. 401 : Maurer's Ap., 86 Pa. 380 ; Forest Oil Co.'s Ap., 118
Pa. 145 ; McCleary's Ap., 20 W. N. 547 ; Downer v. Wilson,
33 Vt. 1 ; Wilson v. Soper, 44 Me. 118 ; North River Construc-
tion Co., 38 N. J. Eq. 433 ; Wood v. Gilson, 17 Ill. 218 ; Wolff
v. Walter, 56 Mo. 292 ; Cockrum v. West, 122 Ind. 372 ; Ger-
dine v. Menage, 41 Minn. 417 ; Oury v. Sanders, 77 Texas,
278 ; Dutcher v. Hobby, 86 Ga. 198 ; Lockwood v. Marsh, 3
Nev. 138 ; Clark v. Clark, 58 Miss. 68 ; Bank v. Clute, 33
Hun, 82 ; Bolman v. Lohman, 74 Ala. 507 ; Everston v. Bank,
33 Kans. 252 ; Gilbert v. Gilbert, 39 Iowa, 657 ; Chafee v. Oli-
ver, 39 Ark. 531 ; Levy v. Martin, 48 Wis. 198 ; Flannary v.
Utley, 5 S. W. R. 878 ; Fry v. Hammer, 50 Ala. 52 ; Ins. Co.
v. Buck, 108 Ind. 174.

OPINION BY MR. JUSTICE GREEN, Oct. 1, 1894 :

After a laborious study of this case, and a most serious con-
sideration of the elaborate and exhaustive arguments of the
learned counsel on both sides, we are constrained to say that
we think the case was correctly decided in the court below.
On the question whether the letter of attorney from the plain-
tiff to her attorney in fact, Robins, dated Dec. 26, 1888, is to
be construed as conferring a power to mortgage the premises
in question, we are quite clear as to the correctness of the de-
cision made both by the master and the court below.   It is true

the precise question does not seem to have been before us heretofore, but we are convinced that the considerations which prevailed in Lancaster v. Dolan and its train of cases, resulting in the declaration that a power to sell land includes a power to mortgage, are entirely inapplicable in the interpretation of a mere letter of attorney with a naked authority to sell, uncoupled with any interest in the land or the fund.

The instrument now in question was essentially of this latter class. So far as this matter is concerned it is in the following words: " Do make, constitute and appoint William B. Robins of said city, attorney at law, my true and lawful attorney, for me and in my name, to grant, bargain and sell in fee simple all real estate owned by me, including all ground rents, on such terms and for such prices as he may see fit, and to make, execute and deliver all necessary deeds and assurances to the purchasers and to assign all policies of insurance on said properties or with said ground rents."

It cannot be questioned that this is but an ordinary letter of attorney to sell real estate in fee simple. It is nothing but a naked authority to sell and make deeds to the purchasers, without any interest whatever in the proceeds, without any power to invest the same or to exercise any kind of control over them. There was no power to raise money for any trust, or to pay debts or charges, or to provide a fund for any charitable or other purpose or for the support of any third person. In short there was no power of any kind whatever, to do more than simply to sell the property and to make deeds to the purchasers.

Under this narrow, specially defined and closely limited authority, the agent executed a bond in the name of his principal for the payment of $7,500, and, to secure the payment of the bond, he executed a mortgage of her real estate, also in her name, and thereby made her a debtor in a large sum, when his only authority to act for her was to sell her real estate and bring her the proceeds. Instead of being the seller of real estate in the enjoyment of the fruits of the sale, she was converted into a debtor with all the duties and obligations which that relation implies. We do not know of any doctrine in the law of principal and agent which will permit such a result to be accomplished in such a mode. The books abound with endless decisions which are in utter hostility with such a transaction as a valid act.

Being a debtor, the plaintiff would be subject to an obligation to pay, not only the principal sum of $7,500, but also annual sums of interest. For failure in her payments she would become personally liable for the moneys due, and be subject to a general judgment which would be a lien upon all her real estate, and upon which process of execution might issue and be levied upon her personal property. In point of fact, a warrant of attorney for the entering of judgment against her for the debt, was contained in the bond executed in her name by her attorney, under an authority which gave him only a bare right to sell her lands. It is not credible that the citizen can be held subject to such consequences, so entirely inconsistent, unexpected and hostile to his express intent, in an instrument of such a character. Whatever else may be said of such a paper, it must be conceded that, in its terms, and in its legal substance, it is a plain, simple letter of attorney establishing the relation of principal and agent between the parties to it. It must therefore be regarded as subject to the rules and requirements of that branch of the law in any event, and if these will not permit it to be used for an ulterior purpose such as is claimed in the present case, then it cannot be so used.

Regarded simply as a letter of attorney establishing an agency, the law concerning it is very clear. Thus in Devinney *v.* Reynolds, 1 W. & S. 328, Mr. Justice ROGERS, delivering the opinion, said: " An agent constituted for a particular purpose and under a limited power cannot bind his principal if he exceeds his power. A special power must be strictly pursued, and whoever deals with an agent constituted for a special purpose deals at his peril when the agent passes the precise limits of his power." This was said of a deed made by an attorney in fact who was authorized to convey a tract of land after he had redeemed it, and he conveyed it without redemption, and it was held the purchaser took no title.

In Story on Agency (ed. 1882), sec. 68, the author says: " Indeed formal instruments of this sort (letters of attorney) are ordinarily subjected to a strict interpretation, and the authority is never extended beyond that which is given in terms or which is necessary and proper for carrying the authority so given into full effect. Thus a power of attorney to sell, assign and transfer stock will not include a power to pledge it for the

agent's own debt." 1 Jones on Mortgages, sec. 129.   A mortgage executed under a power of attorney, authorizing an attorney to sell and convey only is void.   Said Mr. Justice COOLEY in Jeffrey v. Hursh, 49 Mich. 31 : " J. M. Hursh had power to sell the land but not to mortgage it.   The power is not to be extended by construction.   The principal determines for himself what authority he will confer upon his agent, and there can be no implication from his authorizing a sale of his lands that he intends that his agent may at discretion charge him with the responsibilities and duties of a mortgage : Wood v. Goodridge, 6 Cush. 117 ; Albany Fire Ins. Co. v. Bay, 4 N. Y. 9 ; Ferry v. Laible, 31 N. J. Eq. 566 ; Kinney v. Matthews, 69 Mo. 520 ; Patepsco & Co. v. Morrison, 2 Woods, 395 ; Devaynes v. Robinson, 24 Beav. 86."

Deputron v. Young, 134 U. S. 241.   In the case of a naked power, not coupled with an interest, every prerequisite to the exercise of that power should precede it.   A power to make and execute deeds to convey real estate, as the same may be sold to purchasers in tracts by a third party, is a naked power to convey as sales may be made, and a deed made otherwise is a fraud upon the power.

Morris v. Watson, 15 Minn. 212.   As a general rule a power to sell and convey real estate, does not confer a power to mortgage, and a mortgage executed under a power of attorney to sell and convey is void.   The court said : " The power of attorney in this case by Mary C. Hargin to Charles S. Hargin is a power to sell and convey only ; therefore the mortgage executed by Charles S. Hargin to Moses Sherburn under this power of attorney is void."

In the case of Wood v. Goodridge, 6 Cush. 117, a power of attorney authorized the attorney, in the name and for the benefit of the principal, to buy and sell real and personal property and to execute and deliver deeds, to transfer the same, to move and institute all necessary suits for the recovery and collection of his demands. . . . Especially to carry on his saw-mill and buy and sell logs and lumber . . . . and in general to make such contracts for the profitable improvement and use of such property and other means as he possessed for the enlargement of his estate.   The attorney made a mortgage and note for a sum of money, and the question of his power to make them

arose and was decided. The court said: " Levi Goodridge, who made the mortgage and note, had no authority under his power of attorney from Benjamin Goodridge to do these acts, so that the mortgage and note are both invalid and without any legal effect. In accordance with the general and well-settled principles of law, the power of attorney to Levi must be so interpreted as not to extend the authority given to him beyond that which is given in terms, or which is necessary and proper for carrying the authority expressly given into full effect. Now the power of attorney in this case very clearly did not in terms give to Levi authority to mortgage the real estate of his principal; still less does it, in terms, give him the power to borrow money and to bind his principal by a promissory note. . . . In the absence of all evidence that the money was in fact obtained for the principal or that it was necessary for the execution of the authority given, there being no express authority to make a mortgage or negotiable note, there is an entire failure to show that Levi had any authority to make the note and mortgage, and the title of the plaintiff, being derived under that mortgage, wholly fails."

It is not necessary to quote further authorities for a proposition so plain in its character and not opposed by any contrary decisions. As we have already said, the cases of Lancaster v. Dolan and those that follow it, are not pertinent to the discussion because they depend upon different principles and upon facts which have no existence here. We are therefore brought to the consideration of the remaining question whether the appellant is entitled to subrogation to the $6,000 prior mortgage which was paid off with the proceeds of the mortgage in suit.

Upon that subject it is to be observed that the payment of the prior mortgage was the act of a mere volunteer. The plaintiff was not consulted about it and had no knowledge of it. There was no privity of any kind between the plaintiff and the defendant, and the latter was under no compulsion to make the payment for the protection of its interests. The payment was doubtless made so as to make its mortgage a first instead of a second mortgage. But that consideration would give no right of subrogation to the holder of the second mortgage. It seems to us that the case of McCleary's Appeal, 20 W. N. 547, covers every aspect of this. There the first mortgage was an un-

doubtedly valid lien upon the property for $925. The second mortgage was a forgery, and the holder, as here, desiring to have the first lien extinguished, paid $600 of the mortgage money, $1,400, to the agent of the owner of the property, who, with $325 furnished by the owner, paid the $925 due on the first mortgage, had it satisfied, and surrendered the bond and the mortgage to the owner. When the forgery was discovered, the holder of the second mortgage filed a bill praying a cancellation of the entry of satisfaction, and subrogation. Both the court below and this court held that this could not be done, and dismissed the bill upon the express ground that, although the first mortgage was an unquestioned lien, and the money, to the extent of $600, was paid by the holder of the second mortgage, he was a mere volunteer in making such payment and was not entitled to subrogation.

The same doctrine was enforced in the case of Webster and Goldsmith's Appeal, 86 Pa. 409, the syllabus of which is as follows, viz : While subrogation is founded on principles of equity and benevolence and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another. It will not arise in favor of a stranger, but only in favor of a party who, on some sort of compulsion, discharges a demand against a common debtor. There the maker of a promissory note for $700 gave a judgment for that amount to his indorser to protect him against liability on his indorsement. Afterwards, at the maturity of the note, another person consented to indorse a new note to take up the first one upon the express assurance of the maker that the judgment should be assigned to the second indorser for his protection against liability for the same debt. The judgment was assigned shortly after to the second indorser, who was ultimately obliged to pay the note. The property of the maker being sold upon execution process, the holder of the assigned judgment claimed a share in the distribution of the proceeds as against judgments obtained subsequently to the assigned judgment. Priority in the distribution was allowed to the assigned judgment in the court below, but this court reversed the decree, holding that the second indorser was a mere volunteer, and that as the first judgment had served its purpose of protecting the first indorser, it could not be used

to protect the second indorser although assigned to him for that purpose by the first indorser as a condition of the second indorsement.   While we decided that if the judgment had been held by the bank which discounted the note, as a part of their security, subrogation would have been granted, even against intervening judgment creditors, we held also that it could not be granted to one who came in as the indorser of a new note given to take up the first note, because he was a stranger to the first contract, and was to be regarded as a mere volunteer.   WOODWARD, J., said : " While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who without any duty moral or otherwise pays the debt of another : Hoover v. Epler, 2 P. F. Smith, 522.   It will not arise in favor of a stranger but only in favor of a party who, on some sort of compulsion, discharges a demand against a common debtor : Mosier's Appeal, 6 P. F. Smith, 76. . . . There was no privity of interest, and no contract relation, between Bauer and Banker.   Bauer could create no duty to himself by a volunteered intervention for Banker's relief.   He became Adam's indorser without being under any legal or moral compulsion, and he had no existing interest, ascertained or contingent, to protect.   He had no equity to entitle him to subrogation."

So here the payment of the $6,000 due under the first mortgage was not made under any compulsion, or for the protection of any rights or interests previously acquired.   The defendant simply loaned the money, and, in order to remove a prior lien, paid it off without the knowledge or consent of the plaintiff. If a right of subrogation is acquired in such a state of facts we see no reason why it may not exist in every case of officious payment of the debt of another.   Yet it is perfectly clear under all the authorities that such payments do not give any right of subrogation to the debt discharged.

In Beach on Modern Equity Jurisprudence, section 801, the writer says : " But one who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity.   He must have paid upon request or as surety, or under some compulsion made necessary by the adequate protection of his own right.   In such a case instead of creating any right of subrogation, the payment operates as the absolute

discharge of the debt so paid. Thus one who discharges an incumbrance upon property which he has no interest in having relieved, is not thereby subrogated to the rights of the holder of the incumbrance; and the loaning of money to discharge a lien does not subrogate the lender to the rights of the lien holder."

Sheldon in his work on Subrogation, sec. 240, says: "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own."

There can be no question of the soundness of the foregoing propositions, and where the facts are such as to make them applicable, they are controlling. We think, for reasons already stated, they are directly applicable to the undoubted facts of the present case. It is not practicable, within the proper limits of a judicial opinion, to engage in a critical review of the numerous decisions cited in the arguments of counsel on both sides. A great many of them furnish their own answer when the facts which distinguish them are duly noted and considered. Others, which are apparently in point, are affected by the presence of exceptional circumstances which authorize the introduction of different principles with a controlling effect. But a minute and patient attention to, and consideration of, the very able and exhaustive argument for the appellant has failed to convince us of any error in the treatment of the case by the learned master and the court below, and, substantially for the reasons stated by them, we think the decree should be affirmed.

Decree affirmed and appeal dismissed at the cost of the appellants.