## Dexter's Appeal.   Hughes's Estate.

1. A testator devised to his wife the income of his real estate for the support of herself and children until the youngest came of age, then it was to be equally divided amongst the children. When the youngest child came of age the children made an amicable partition, fixed the widow's annual payments in lieu of dower, and agreed that the land should remain charged with the payments, &c.; that on default, a scire facias might issue on it, or she might elect that it was at an end and proceed to recover her dower; in accordance with the agreement it was recorded. On the sheriff's sale of the part of one of the children, *Held*, that the amount of the value of the widow's interest and the arrearages of her annuity should be paid out of the fund prior to liens subsequent to the recording of the agreement.

2. The agreement created a charge on the land, and the recording was notice to all persons afterwards taking title to it.

3. An encumbrance may be fixed upon land by deed, following it into the hands of subsequent purchasers, and is as effective as the lien of a judgment.

March 16th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Wayne county :* Of January Term 1875, No. 201. In the distribution of the proceeds of the sheriff's sale of Henry F. Hughes's land.

James Hughes, the father of Henry and owner of the property which produced the fund for distribution, died in the spring of 1852, leaving a will by which he gave to his wife Margaret all his personal property remaining after the payment of his debts, and the rents, issues and profits of his real estate, in trust for the support of herself and three children, Henry, James and Elizabeth, until they reached full age; after the youngest child arrived at age, the real estate to be divided between the three children. On the 30th of March 1867, all the children having arrived at age, an amicable partition was made, under which Elizabeth conveyed to Henry and James the land afterwards sold by the sheriff as Henry's, and they conveyed to Elizabeth another piece of their father's land.

On the 28th of September 1869, James conveyed to Henry his interest in the land assigned to them.

On the 11th of November 1869, the widow of the one part and Henry and Elizabeth of the other part entered into an agreement reciting, amongst other things, the amicable partition and final conveyance to Henry; also "That Margaret Hughes is entitled to her dower in said lands as widow of James Hughes, deceased; and that to avoid proceedings at law and to fix upon the sum which shall be paid her in semi-annual payments during her life by Henry and Elizabeth, and the amount each shall pay, and to secure the payment of the same upon the aforesaid premises.

"The parties agree upon (three men) to decide and fix upon amount to be paid each year by Henry and Elizabeth, to be paid in semi-annual payments, &c.

" And Henry and Elizabeth jointly and severally covenant and agree well and truly to pay to said Margaret or her assigns annually during her life the sum awarded to be paid her, in semi-annual payments; and that this agreement and the sum or sums so awarded to be paid annually to said Margaret or her assigns, and the said award when made hereafter, hereon endorsed, and each and every of the same shall be and remain a true claim and demand upon and against the aforesaid described lands, and said lands to be and remain charged therewith and liable for the payment thereof, and in case of failure at any time or times to pay any money becoming due upon this agreement or the award made in pursuance of same, it shall be lawful for said Margaret Hughes to sue out a writ of scire facias hereon, and for the Court of Common Pleas to enter judgment thereon for such sums as to said court shall seem meet and proper, to enable said Margaret or her assigns to collect any moneys that then are or may thereafter become due upon this agreement or upon said award, &c., &c.

" It is further agreed in case of default for thirty days in said annual payments, said Margaret may if she elects declare this agreement at an end and proceed to recover and enforce her claims or right of dower in aforesaid premises, without exception, loss or hindrance by or from the parties of the second part to this agreement, but said election to be in writing.

" The award of arbitrators to be endorsed upon this agreement, to be without appeal and final between the parties, and to become part of the agreement, so that same may be made and entered of record herewith, and the recorder is authorized to enter same of record."

The award of the referees endorsed on the agreement decided that Henry and Elizabeth should pay to the widow the annual sum of $225 in semi-annual payments; the first payment of $112.50 to be made on the 11th day of May, A. D. 1870.

Both the agreement and award were acknowledged and, on the 22d day of November 1869, entered of record.

Before the execution and recording of the agreement and award, judgments to a large amount were entered against Henry Hughes in favor of various parties.

Judgments to a large amount were also entered against Henry Hughes in favor of various persons after recording the agreement and award.

Henry died about December 1st 1870. His real estate was sold by the sheriff August 29th 1873; the proceeds, $6267.95, were brought into court and H. M. Seely, Esq., appointed auditor to report distribution.

Before him the widow claimed that the agreement and award, having been duly recorded, created a lien on the land of Henry

Hughes in her favor for the amount awarded to be paid to her, for which she was entitled to come upon the proceeds of the land.

The auditor reported as his opinion that it was not competent for the parties by the agreement to create a lien upon the land to secure the payments to the widow; he therefore awarded the fund to the judgment creditors of Henry Hughes, excluding the widow.

The widow excepted to the report of the auditor; that he should have awarded to her all the money arising from the sheriff's sale after payment of the liens entered before the 22d of November 1869.

The court sustained the exceptions, Dreher, P. J., saying:—

* * * "Any writing that is a valid mortgage in Pennsylvania, it seems to me, must be within our recording acts. I cannot conceive how there can be a valid mortgage that may not be recorded if acknowledged, or the execution thereof proven in the mode prescribed by the recording acts. The sheriff's sale was by virtue of an execution upon a judgment prior in lien to Mrs. Hughes's mortgage, and therefore no question can arise as to whether the lien of the mortgage was discharged by the sale. The lien being discharged the case only looks to the fund now in court.

"I do not see how the question, whether Mrs. Hughes's claim of dower was valid or not, can affect her right under the mortgage. The parties were competent to contract in relation thereto and actually did contract. It is certainly binding as between themselves, and there is no allegation of fraud as to creditors, and therefore whether she could or could not have maintained an action of dower is immaterial.

"The mortgage covers Elizabeth's property as well as that of Henry Hughes, and by the agreement they were each to pay one-half of the annuity. Henry's property has been sold by the sheriff, and the proceeds are now in court. The mortgage is still a lien on Elizabeth's land, and I think that the widow should claim of the fund in court only the one-half of the annuity. She is entitled to the cash value of the one-half of the annuity, at the date of the sheriff's sale, and in addition thereto the amount that was then due and unpaid by Henry. The report is referred back to the auditor with the instruction to make distribution in accordance with this opinion."

The auditor reported in accordance with the decree of the court, awarding to the widow "for one-half the annuity and interest due at the time of the sheriff's sale," and "for half the cash value of the annuity at the date of the sheriff's sale, $1280.92."

The balance of the fund did not reach to pay the subsequent lien creditors of Henry Hughes. They excepted to this report of the auditor; it was confirmed, and Jesse C. Dexter, with other creditors, appealed to the Supreme Court.

They assigned the decree of confirmation for error.

[Dexter's Appeal.]

*G. C. Waller*, for the appellant.—The instrument was not a mortgage. A defeasance is essential to a mortgage: Payne *v.* Patterson, 27 P. F. Smith 137 ; Pennsylvania L. Ins. Co. *v.* Austin, 6 Wright 266.

*F. M. Crane*, for appellee.

Judgment was entered in the Supreme Court, March 27th 1876,

PER CURIAM.—It matters not what name we give to the agreement between the parties of the 11th of November 1869 ; whether a mortgage, a rent-charge, annuity or what. It is an instrument under seal, admitting an estate in the widow in the land, at the time of the amicable partition among the children, and charging the land with the payment of the annual sum to her in lieu thereof, according to the terms of the writing. To this charge the other parties bound themselves firmly by their covenants, when ascertained in the mode fixed upon by themselves ; and provided for a record thereof, as notice to all persons who might take title afterwards to the land. Now, that an encumbrance may be fixed upon land by deed, following it into the hands of subsequent purchasers, is too well settled to require a citation of precedents. Such is the nature of a mortgage, of a ground-rent deed, of an annuity, and of a subjection by the terms of a conveyance. It is the direct act of the owners of the land, whereby they fix a charge upon it, and is quite as effective as the lien of a judgment, which is a mere incident at law.

Decree affirmed, with costs, and appeal dismissed.