# In Re Account of Commonwealth Trust Co., Trustee (No. 1).

*Trusts and trustees—Distribution of trust—Beneficiaries—Subrogation—Volunteer.*

1. One who accepts with his eyes open a second mortgage as security for a loan must be presumed to anticipate the possibility of being required to look out for the lien of the first mortgage upon the property.

2. The doctrine of subrogation is founded upon principles of equity and may be decreed where no contract exists between the parties, but not in favor of a mere volunteer.

3. On December 1, 1906, the owner of certain real estate executed a trust deed of the same by which the trustee was given control over the property with power of sale during the lifetime of the grantor's wife and for three years after her death, net income to be paid to the wife during her lifetime and after her death to her testamentary appointees, the proceeds of a sale to be used in paying off encumbrances then existing against certain property of the wife in New York, upon the proviso that this property at the time of the sale of the trust res was owned by the wife. The liens against the property were held by a college and an individual. On June 19, 1911, the wife executed a mortgage on the New York property to secure the payment of $13,500, subject to the prior mortgage claim in favor of Columbia College, out of the proceeds of which the individual mortgage was paid with accrued interest to the amount of $5,325.41, whereupon the mortgage was satisfied of record. The $13,500 mortgage was assigned five months later to Annie E. Copeland, who had no knowledge of the trust, and did not depend upon it in any way as security for the loan. On December 2, 1912, Mrs. Copeland in order to prevent threatened foreclosure, paid the sum of $1,361.25, interest on the college mortgage. On October 1, 1912, the wife aliened the New York property. In November, 1912, the trust res was sold and the purchase price passed to the trustee for distribution. In March, 1913, the college instituted foreclosure proceedings and the New York property was sold for a sum less than the face of the mortgage. Upon distribution of the trust fund claim was made by Mrs. Copeland for the full amount of her second mortgage and for the interest paid by her on account of the college mortgage. *Held,* that the power of the trustee to make payment did not extend to the $13,-500 mortgage and was in all events contingent upon the continued

ownership of the New York property by the wife, who had in fact conveyed it prior to the sale of the trust res, and further that Annie E. Copeland could not come in on the fund under any doctrine of subrogation, she being a mere volunteer, so far as payments by her were concerned.

Argued Oct. 23, 1914. Appeal, No. 212, Oct. T., 1914, by Kathleen T. Harper, from the decree of C. P. Allegheny Co., July T., 1913, No. 140, in equity, dismissing exceptions to report of auditor in re account of Commonwealth Trust Company of Pittsburgh, Trustee under Deed of Orlando M. Harper and Kathleen T. Harper, his wife. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed in part.

Account of Commonwealth Trust Company of Pittsburgh, trustee.

Exceptions to report of distribution of J. Houston Johnston, Esq., auditor.

The facts appear by the opinion of the Supreme Court.

The court dismissed the exceptions. Kathleen T. Harper appealed.

*Error assigned,* among others, was in dismissing exception to auditor's report awarding portion of the trust fund to Annie E. Copeland.

*Frederic W. Miller,* for appellant.—The doctrine of subrogation cannot apply in this case, first, so far as the Columbia University mortgage is concerned, because Mrs. Copeland has not paid it; second, so far as the Kennedy mortgage is concerned because it is not within the terms of the trust, and to apply the doctrine would work an injustice to third persons: Kyner v. Kyner, 6 Watts 221; Lloyd v. Galbraith, 32 Pa. 103; Knouf's App., 91 Pa. 78; Shimp's Assigned Est., 197 Pa. 128.

*Ralph Longnecker,* with him *John G. Buchanan* and *Gordon & Smith,* for appellee.—Annie E. Copeland is en-

titled to be subrogated to the rights of H. Van Rensselaer Kennedy: Brice's App., 95 Pa. 145; Gans v. Thieme, 93 N. Y. 225; Cumberland Building & Loan Assn. v. Sparks, 111 Fed. 647; Haverford Loan and Building Assn. of Philadelphia v. Fire Assn. of Philadelphia, 180 Pa. 522; Gossin & Denny v. Brown, 11 Pa. 527; Bonham's Est., 4 Kulp 457; Reap v. Battle, 155 Pa. 265; Milligan's App., 104 Pa. 503.

OPINION BY MR. JUSTICE POTTER, January 2, 1915:

This is an appeal from the confirmation of the report of an auditor, making distribution of funds in the hands of the accountant as trustee. From the history of the case as given by counsel for appellant we take the recital of the facts. On December 1, 1906, Orlando M. Harper executed and delivered to the Commonwealth Trust Company of Pittsburgh a deed of trust, in which his wife, Kathleen T. Harper, joined. The subject matter of the trust was an undivided one-third interest in a certain lot of ground, having erected thereon an eight-story building, situated at the corner of Liberty avenue, and what is now Ellesmere street, in the City of Pittsburgh. The trustee was given full control over the property, with power of sale during the lifetime of Kathleen T. Harper, and for three years after her death. The net income from the trust estate was to be paid to Mrs. Harper during her lifetime and after her death to her testamentary appointees, or in default of such appointment then to her heirs under the intestate laws of Pennsylvania. In case of a sale of the property, the trustee, after the payment of all liens and proper charges in connection with the sale was directed to use the proceeds in paying any mortgage or mortgages held by the trustees of Columbia College in the City of New York and by H. Van Rensselaer Kennedy, or either of them, or their assigns, and in payment of any other encumbrances existing on the first day of December, 1906, or becoming a lien within one year thereafter, against the property known as No. 41

West 47th street, in the City of New York, which then belonged to Kathleen T. Harper; upon the proviso that this property at the time of the sale of the Pittsburgh property was owned by Kathleen T. Harper, or was held by any trustee, to whom she might convey or devise the same. It appears further that on June 19, 1911, Kathleen T. Harper executed and delivered to Judith W. Richardson a mortgage upon the New York property to secure the payment of $13,500. This mortgage was accompanied by a bond, and Orlando M. Harper, her husband, joined in executing the bond and mortgage. Out of the proceeds of this loan the Kennedy mortgage, to which reference was made in the deed of trust, was paid with accrued interest, the principal so paid being $4,745, and the interest being $580.41, making a total of $5,325.41. These payments were made at the direction of Kathleen T. Harper, on the day upon which the Richardson mortgage bore date, namely, June 19, 1911; whereupon the Kennedy mortgage was marked paid and satisfied in full upon the record. The Richardson mortgage was some five months afterwards assigned to Annie E. Copeland, the appellee. On the second day of December, 1912, in order to prevent threatened foreclosure, Mrs. Copeland paid the sum of $1,361.25 as interest on the underlying mortgage owned by the Columbia College. Nothing was ever paid by Mrs. Harper on account of the principal of the Richardson-Copeland mortgage, but interest was paid thereon in full to December 20, 1912. In the month of March, 1912, proceedings were instituted in the Orphans' Court of Allegheny County, Pennsylvania, by John A. Harper for partition of the Harper property as described in the deed to the Commonwealth Trust Company referred to above. Under these proceedings this property was on November 18, 1912, sold to John A. Harper, and return of the sale was duly made to the Orphans' Court on November 27, 1912, which return was confirmed absolutely on December 27, 1912. The share of the purchase-price, which was due to the Common-

wealth Trust Company, trustee, was thereafter duly paid to it, and in due course it filed its account, showing the sum of $29,217.27 in its hands for distribution. It appears also from the record that on October 1, 1912, Kathleen T. Harper acknowledged and delivered to Calhoun Craigin, in consideration of the sum of $10.00 and other good and valuable considerations, a deed in fee simple for the property at No. 41 West 47th street, New York, which was then subject to the lien of the Columbia College mortgage, and the Richardson-Copeland mortgage, as above set forth. In March, 1913, the trustees of Columbia College, instituted foreclosure proceedings under the mortgage which it held upon the property at No. 41 West 47th street, and at the sale it bid in the property, for the sum of $60,000, which was somewhat less than the face of the mortgage which it held upon the property. No effort was apparently made by Mrs. Copeland, the holder of the second mortgage, to protect her interest by bidding the property up to an amount sufficient to cover the first mortgage. The evidence indicates that an offer to purchase the property for $78,000, was made in 1912, and that its owners had previously regarded it as worth more than that amount.

An auditor was appointed to distribute the fund in the hands of the Commonwealth Trust Company, trustee. At the hearings before him Mrs. Copeland appeared by counsel, and claimed that out of the trust fund, she should be allowed the entire amount of her second mortgage upon the New York property, and a further sum of $1,361.25, which she paid out for interest upon the first mortgage upon that property. This claim was based upon a theory, that if the holder of the Kennedy mortgage had not been paid, he would have been entitled to payment out of the trust fund. And that under the circumstances, Mrs. Copeland was entitled to be subrogated to all the rights of Kennedy as mortgagee of the New York property. The auditor reached the conclusion that the deed for the New York

property from Mrs. Harper to Calhoun Craigin was invalid, in so far as Mrs. Copeland was concerned, and he awarded her the amount which was paid in discharge and satisfaction of the Kennedy mortgage, namely, $5,-330.41, with interest, and he also awarded to her the sum of $1,361.25 which she had paid as interest upon the Columbia College mortgage. The remainder of Mrs. Copeland's claim was disallowed. Exceptions to the report of the auditor were filed on behalf of both Mrs. Harper and Mrs. Copeland, which were dismissed. These exceptions were renewed in the Court of Common Pleas, and were there also dismissed. From this action of the court, Mrs. Harper has appealed, and her counsel has filed fifteen assignments of error.

It will be noticed in the first place that the real estate in the City of Pittsburgh, which was the subject of the trust, was the property of Orlando M. Harper. His sole purpose in creating the trust was to benefit and protect his wife, Kathleen T. Harper. So long as the property was held by the trustee, it was to pay to Mrs. Harper the net income therefrom, during her lifetime, and eventually the proceeds of the property was to go to her testamentary appointees, or to her heirs. In case of a sale of the premises, the trustee was directed to use the proceeds in paying certain mortgages which he designated, and other encumbrances then existing against the New York property, or which might become a lien thereon prior to December 1, 1907. The New York property belonged to Mrs. Harper, and the manifest purpose of the direction was to clear it of encumbrances and preserve it for her benefit. The entire direction for the payment of mortgages and encumbrances upon the property was conditioned upon the fact that at the time of payment, the property was to be in the ownership of Mrs. Harper, or in that of a trustee named by her. It is evident that in making this provision for the benefit of his wife Mr. Harper did not take into consideration the holders of the mortgages, for they were not in any

sense the objects of his bounty. The mortgagees knew nothing of the creation of the trust, nor of its terms, nor did they in making the loans depend in any way upon the terms of the trust as security to them. Evidently Mr. Harper anticipated that the proceeds of the sale of the Pittsburgh property would be more than sufficient to•pay and discharge the mortgages upon the New York property, for he directed that in case of such payment, the residue or remainder after such discharge, should be invested by the trustee in such securities as were approved under the laws of the State of Pennsylvania. We are clearly of the opinion therefore, that the only consideration which should have properly influenced the trustee in acting with respect to the discharge of encumbrances upon the New York property, would have been the interest or benefit of Mrs. Harper. Even if it should be conceded that there is anything in the deed of trust to support a claim against it by a mortgagee, it must be noted that the power of the trustee to make payment did not extend beyond encumbrances which existed against the property on December 1, 1907, This would not include the Richardson-Copeland mortgage, which was created on June 19, 1911. But most conclusive of all is the fact that these payments were only to be made in case the property was at the time owned by Mrs. Harper. The record shows that she did not own the 47th street property, at the time when the Pittsburgh property was sold. She had disposed of it by deeding it to Calhoun Craigin, for what, in so far as the record shows, was an entirely valid consideration. The record shows that the property was at the time encumbered to practically the amount of its full value. An equity only remained in Mrs. Harper and this she had a right to dispose of as she deemed best. Certainly the mortgagees had no right to question her action in this respect. The doctrine of subrogation has no proper application to the circumstances of this case. That doctrine is founded on principles of equity, and may be de-

creed where no contract exists between the parties; but not in favor of a mere volunteer: Hoover v. Epler, 52 Pa. 522. This was merely the ordinary case of granting a mortgage loan, with an agreement upon the part of the borrower that from the proceeds thereof, distribution should first be made, in payment of existing encumbrances, which would otherwise stand in the way of the lien of the new mortgage: In Campbell v. Foster Home Assn., 163 Pa. 609, GREEN, J. (p. 636), quotes with approval from Beach on Modern Equity Jurisprudence, Sec. 801, as follows: "But one who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. He must have paid upon request or as surety, or under some compulsion made necessary by the adequate protection of his own right. In such a case instead of creating any right of subrogation, the payment operates as the absolute discharge of the debt so paid. Thus one who discharges an encumbrance upon property which he has no interest in having relieved, is not thereby subrogated to the rights of the holder of the encumbrance; and the loaning of money to discharge a lien does not subrogate the lender to the rights of the lien holder." He also quotes from Sheldon on Subrogation, Sec. 240, as follows: "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own." In the present case the Kennedy mortgage was not paid under any compulsion or to protect any right of the new lender. It was merely paid to discharge an encumbrance upon property in which Mrs. Richardson had previously no interest. Of course, if the encumbrance had not been discharged the loan would not have been made. Mrs. Richardson was under no legal obligation whatever to make payment of the Kennedy mortgage.

All that was stipulated for in this case in making the new loan, was a lien as a second mortgage, and this the lender, Mrs. Richardson, received. She acting through her agent and attorney in fact, received all that she expected or was entitled to get. Neither she, nor her counsel knew anything of the terms of the trust which had been created for the benefit of Mrs. Harper in Pittsburgh, nor did she depend upon the trust in any way as security for the loan. This second mortgage was afterwards assigned to Mrs. Copeland, and of course, the payment by her of interest upon the prior mortgage to Columbia College, was entirely a voluntary act. One who accepts with eyes open, a second mortgage as security for a loan, must be presumed to anticipate the possibility of being required to look out for the lien of a first mortgage upon the property.

The fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fifteenth assignments of error are sustained, and in so far as anything is allowed upon the claim of Annie E. Copeland, the decree of the court below is reversed; the costs of this appeal to be borne by the appellee.