## Cramer v. Equitable Gas Company.

*Waychoff & Waychoff*, for plaintiff.
*Langfitt & Langfitt* and *Scott & Hood*, for defendant.

SAYERS, P. J., Oct. 21, 1929.—The plaintiff, Downey Cramer, suffered personal injuries and the loss of his automobile truck in an accident which a jury found to be due to the negligence of a servant of the defendant, the Equitable Gas Company, in operating an automobile belonging to defendant.

On Aug. 12, 1925, the plaintiff brought an action for personal injuries against the defendant company, claiming in his statement that the accident occurred on April 16, 1925. The case was tried and the jury rendered a verdict in favor of the plaintiff and against the defendant on June 15, 1927, in the sum of $858.34. A motion for judgment *n. o. v.* was filed and, subsequently, without arguing the motion, the defendant company, on Dec. 19, 1928, filed its petition in the said case, alleging that the Providence Washington Insurance Company, hereinafter designated as the insurance company, with offices at Washington, Pennsylvania, was claiming under a subrogation assignment from Downey Cramer all of the money to be recovered by him in the above action; that a part of the money was claimed by R. E. Kent, of Waynesburg, Pennsylvania, by virtue of an assignment from Downey Cramer to him; and that Challen W. Waychoff, attorney for Downey Cramer, was

also claiming part of the money by virtue of an assignment from the plaintiff.

The defendant set forth in its petition that it was ready to pay the amount of the verdict, interest and costs, but that by reason of the several claims to the proceeds of the verdict and by reason of the inability of the various claimants to agree among themselves as to the proper distribution of the money, it could not safely pay out the money in its hands.

Upon this petition a rule was granted upon the insurance company, R. E. Kent, Challen W. Waychoff and Downey Cramer to show cause why the amount of said verdict, interest and costs should not be paid into court and the judgment satisfied. To this rule answers were filed by the insurance company; by Challen W. Waychoff and Roy J. Waychoff, attorneys for the plaintiff, claiming by virtue of an assignment from him of a portion of the verdict; by R. E. Kent, who claims a part of the verdict by reason of an assignment to him from Downey Cramer, the plaintiff; and by Downey Cramer, the plaintiff. The whole matter was submitted to the court on the petition and the answers filed and the brief submitted by the insurance company. No briefs were filed by any other of the parties interested.

The facts in the case must be gleaned by the court from the admissions or statements of fact in the petitions and answers filed.

1. On May 13, 1925, the Providence Washington Insurance Company issued an automobile insurance policy upon a 1924 3½-ton Federal truck to Downey Cramer and the S. M. Byers Motor Car Company, as their interests may appear, insuring said truck against direct loss or damage which it claims it is entitled to under the terms of the policy, a copy of which is marked Exhibit "A" and attached to its answer.

2. The said truck was totally destroyed in an accident caused by the negligence of a servant of the Equitable Gas Company, which occurred on May 16, 1925. The testimony on the trial of the case set forth that the accident occurred on April 16, 1925, and that date was not disputed at the trial, but the records of the hospital at Waynesburg show conclusively that the accident happened on May 16, 1925, as set forth in Exhibits "B" and "C," attached to the petition of the insurance company filed in this case.

3. The plaintiff's truck was totally destroyed in the accident and his loss was adjusted by the agent of the insurance company and assessed at $2600, the amount thereof being paid to plaintiff and the S. M. Byers Motor Car Company on June 9, 1925.

4. The insurance policy provided as follows: "Subrogation—This company may require from the assured an assignment of all right of recovery against any party for loss or damage to the extent that payment thereof is made by this company."

5. Pursuant to the provisions of the last recited clause in said policy of insurance, the insurance company, on June 9, 1925, having paid the insurance, took from the plaintiff and the S. M. Byers Motor Car Company a subrogation receipt and an assignment, whereby the plaintiff subrogated all of his right of recovery for damage due to the accident of May 16, 1925, to the said insurance company.

6. The insurance company, on April 8, 1926, notified the General Accident Fire and Life Assurance Corporation, Limited, of Perth, Scotland, insurance carrier of the Equitable Gas Company, and, later, on April 11, 1925, notified the Equitable Gas Company, defendant, that it had paid the claim of the plaintiff and S. M. Byers Motor Car Company to the extent of $2600 and taken from them a subrogation receipt and assignment under which they subrogated all their right of recovery due to the accident of May 16, 1925, to the

said insurance company, and that it would be entitled to receive the full amount of the verdict in the case up to the sum of $2600.

7. The plaintiff, in bringing this suit, disregarded the rights of the insurance company and brought his action for the recovery of damages only for personal injury, instead of having brought his action for the recovery of damages to his person and property, and thereby the insurance company was deprived of its right of subrogation in case damages were recovered for the loss of the truck.

8. R. E. Kent claims that on or about April 23, 1925, Downey Cramer, the plaintiff, assigned to him one-half of the gross amount that the plaintiff might recover as damages for personal injuries. The alleged assignment from Cramer to Kent is lost, and while the petition sets forth that the assignment was made for a good and sufficient consideration, it is apparent that it could not have been made on April 23, 1925, which was several weeks before the accident occurred. No notice of his assignment was given by R. E. Kent either to the Equitable Gas Company, defendant, or its insurance carrier, the General Accident Fire and Life Assurance Company, Limited, of Perth, Scotland.

9. On July 1, 1925, the plaintiff, being in indigent circumstances and unable to compensate attorneys for their services, entered into an agreement with Challen W. Waychoff and Roy J. Waychoff, attorneys-at-law, whereby they were to receive for their services, contingent upon recovery, one-fourth of all moneys recovered in the action which they were to bring against the Equitable Gas Company. This assignment or contingent fee agreement is also lost and no notice of it was given to the Equitable Gas Company, the defendant, or to its insurance carrier, the General Accident Fire and Life Assurance Company, Limited, of Perth, Scotland.

10. Downey Cramer, the plaintiff, in his answer, agrees that Challen W. Waychoff and Roy J. Waychoff were entitled to recover one-fourth of the amount of the verdict to be paid by the defendant, and that one-half of the verdict should be paid by the defendant to R. E. Kent by virtue of the assignment which he holds from Cramer, and that he, the plaintiff, is entitled to the remaining one-fourth of the amount of said verdict.

### Discussion.

The respondent, the Providence Washington Insurance Company, claims that it was the duty of Downey Cramer, the plaintiff, in bringing his action in this case, to sue not only for the recovery of damages for personal injuries which he suffered, but also to sue for the damages he had suffered by reason of the loss of his truck, the right to which he had transferred by subrogation assignment to the said insurance company.

It is further claimed that Downey Cramer could only bring one action for the recovery of any damages due to said accident, and he should have included in his statement of claim a count for property damage, but having failed to do so, the plaintiff put it out of the power of the insurance company to assert its rights against the defendant by virtue of the subrogation assignment which it held from the plaintiff and the S. M. Byers Motor Car Company.

The insurance company claims on the authority of Manley *v.* Montgomery Bus Co., Inc., et al., 82 Pa. Superior Ct. 530. Manley brought his action to recover damages for injury to his person and to his automobile, but after the bringing of his action he entered into an agreement with the defendant company, whereby he discontinued and abandoned his claim for damages as it related to his automobile and went to trial only for damages for personal injury and recovered a verdict.

There are several matters in this case which distinguish it from the Manley case. In the first place, the policy under which the insurance company in this case claims the right to be subrogated to the rights of the plaintiff does not appear to be a policy protecting the assured against damages suffered by collision, but is a policy insuring the assured against *(a)* fire and lightning, *(b)* injury to the truck while being transported in another conveyance by land or water, and *(c)* against theft, robbery or pilferage. The insurance company adjusted the loss caused by the collision, and paid to Downey Cramer and S. M. Byers Motor Car Company $2600 in full settlement for all claims for loss and damage by collision under the above policy, No. 13547. The policy does not insure against collision damage to the truck in use on the road, caused by the negligence of persons other than the owners.

The subrogation agreement in the policy of insurance provides for an assignment from the assured "of all right of recovery for loss or damage to the extent that payment therefor is made by this company." The subrogation receipt itself reads as follows:

"To the Providence Washington Insurance Company,

"Having received full settlement of claim under Policy 13547 issued by The Providence Washington Insurance Company by its Washington, Pa., agent of accident of May 16th, in which car insured was destroyed by collision we hereby subrogate all right for recovery to said insurance company.

"June 9, 1925.                              "DOWNEY CRAMER.
                                           "S. M. BYERS, Pres.
"Witness:                                  "S. M. Byers Motor Car Co.
        "EDW. R. PATTERSON,
        "Justice of the Peace.
        "My commission expires First Monday Jan. 1926."

Both the assured and the insurance company evidently believed that the assured, including the plaintiff, were entitled, after paying the amount of their adjusted claim of $2600, to be subrogated to the plaintiff's right to recover all damages growing out of the accident. Consequently, it was the duty of the plaintiff in bringing the action in this case to sue not only for his personal injuries due to the negligence of the defendant, but also for the injury or damage done to his automobile truck.

When an action has been brought for property damage, due to the negligent act of another, a second suit cannot be brought for personal injuries to plaintiff sustained by the same negligent act of the defendant. If the cause of action is the wrongful act, then all of the damages sustained thereby, whether to person or property, are properly brought in one suit: Fields v. Phila. Rapid Transit Co., 273 Pa. 282; Manley *v.* Montgomery Bus Co., *supra.*

If it were not for the written subrogation assignments the insurance company would of necessity be mere volunteers in paying plaintiff's claim, because not bound so to do by the terms of their insurance policy. Ordinarily, a mere volunteer is not entitled to be subrogated to the rights of the original creditor who is being indemnified or protected: In re Commonwealth Trust Co., Trustee, 247 Pa. 508; Webster and Goldsmith's Appeal, 86 Pa. 409; Thompson *v.* Griggs, 31 Pa. Superior Ct. 608.

Here we have the case of an insured plaintiff making claim for a loss he believed due him which was paid by the insurance company under the belief that they were bound by their policy contract to pay, and actually taking from the assured, plaintiff in this case, a subrogation receipt and assignment of his claim. The insurance company here is not a mere volunteer.

It is held in Leggate *v.* Korn, 74 Pa. Superior Ct. 383, "that the doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own." It may readily be seen that the insurance company, the subrogation creditor in this case, is not a mere volunteer because it believed itself to be bound by the insurance policy issued to Cramer. Moreover, it has an assignment or agreement for subrogation, and, in the opinion of this court, is in the same situation as though it had paid the insurance money to Cramer under a policy which actually bound it to make such payment.

In the case of Lackawanna T. & S. Deposit Co. *v.* Gomeringer, 236 Pa. 179, 188, in discussing subrogation and payment by volunteer, the Supreme Court outlines the controlling principles as follows:

"The doctrine of subrogation rests fundamentally on the equitable principle that when a party is required to pay a debt for which another is also liable and which that other in good conscience ought to pay, such payment should operate to invest the party paying with the creditor's rights and remedies against the other debtor. And this is the mode which equity adopts to compel the ultimate payment by him who in good conscience ought to pay the debt, to the relief of him to whom none but the creditor could ask to pay. A simple statement of the principle is all that is here required; any elaboration of it would be simply a repetition of what has been said so frequently in cases where the doctrine has been discussed and applied. This much is involved in the very definition of the principle, viz., that it can be invoked only for the protection of one who has paid the debt of another because he had made himself legally liable in connection therewith. When one under no liability himself in connection with the debt voluntarily pays it, no equity can arise from the transaction calling for protection. In such case, payment extinguishes the debt, except as the creditor receives the money upon the understanding that the debt is to be assigned to the party paying. In such case, the transaction being one of purchase and not payment, the debt survives. It is manifest, however, that the transaction can take this shape only as the creditor assents. All that the debtor can demand of the creditor is a discharge of his liability upon payment. He is in no position to require a transfer of it to another. A volunteer who steps in and pays the debt has no higher rights. So it is evident that the right to subrogation can result only when the party paying was not a primary debtor, but yet a party legally liable for the debt at the suit of the creditor."

It will be observed in this case, as suggested in the last recited case, that the assured, Cramer, received the money not only upon an understanding that his damage claim was to be assigned *pro tanto* to the insurance company, but the understanding was carried out and the claim assigned by the subrogation receipt and assignment hereinbefore set forth. Cramer made this assignment, and, as has already been said, it was his duty to include the claim for damages to the automobile truck in his suit against the Equitable Gas Company for the use of the insurance company, to which he had assigned so much of his claim. Having failed to do this, he is in the same situation as the plaintiff in the case of Manley *v.* Montgomery Bus Company, *supra,* and since he has voluntarily waived his claim for damages to the automobile truck covered by the insurance, the insurer is entitled to be reimbursed from the amount recovered by him for personal injuries.

How, then, is this situation affected by the claim of Challen W. Waychoff and Roy J. Waychoff, attorneys for plaintiff, whose efforts in his behalf resulted in a verdict, the right to the proceeds of which are here in dispute? The agreement between the plaintiff in this case and his attorneys that they should have one-fourth of the amount of the verdict in this action operates as an equitable assignment of one-fourth of the amount of the verdict in this case and would be good as against the plaintiff, and we hold in this case that such an assignment is good as against the legal right of the subrogated assignee of the plaintiff; in this case the insurance company. It is held in Patten v. Wilson, 34 Pa. 299, that a claim for unliquidated damages in an action sounding in tort is not capable of an assignment before a verdict so far as respects the rights of third persons; but as between attorney and client, an agreement to assign a whole or part of a future verdict is binding; and being founded on sufficient consideration, should be enforced.

In the instant case, the real plaintiff knew that he should proceed in this action to recover damages for his truck for the use of the insurance company. His attorneys also should know that it was his duty to proceed for the damages caused by the loss of the plaintiff's automobile truck. Both of them should have known that the insurance company was entitled to recoup itself for the damages it had paid to the plaintiff due to the negligence of the defendant.

"As a general rule, an attorney has a lien for his services only upon what he has in his possession: McKelvy's and Sterrett's Appeals, 108 Pa. 615:" Aber's Petition, 18 Pa. Superior Ct. 110. It has been held in a number of cases that the claim of an attaching creditor is not superior to that of an attorney claiming by assignment (Smith et al. v. Keener, 270 Pa. 578, 583, and Patten v. Wilson, supra), because the attaching creditor stands in the shoes of the debtor and his equities rise no higher than those of the debtor. We are of the opinion that the insurance company, being subrogated to the rights of Cramer, the plaintiff, is in the same situation as the plaintiff and does stand in his shoes to the extent that the fund it claims is subject to an equitable lien for attorney's fees. In so holding, we are not ignoring the general rules as to the lien of attorney's fees laid down in Dubois's Appeal, 38 Pa. 231; Patrick v. Smith, 2 Pa. Superior Ct. 113, and other cases holding to the same general principles.

The claim of R. E. Kent to a part of the verdict is that of a mere volunteer without lien or an equity as against the insurance company or the attorneys for plaintiff, and need not be further considered. So, also, is the claim of the plaintiff. He failed to protect his subrogation assignee by suit as he was legally bound to do, and, as we have already found, has forfeited to it his share of the verdict.

The use or subrogation plaintiff, in equity and good conscience, should pay reasonable counsel fees in this case, and one-fourth of the verdict recovered by plaintiff's attorneys is reasonable and should be allowed as counsel fees to Challen W. and Roy J. Waychoff.

*Conclusions of law.*

1. It was the duty of Downey Cramer, the plaintiff, to sue not only for himself, but for the insurance company, to which he had transferred his right to recover damages for the loss of his truck by his subrogation assignment.

2. The plaintiff, Downey Cramer, could only bring one action for the recovery of any damages due to the accident, and he should have included in his claim not only his personal injuries, but a count for property damage, and

having failed to do so, he put it out of the power of the insurance company to assert its rights against the defendant by virtue of the subrogation assignment which it held, and, consequently, the insurance company is entitled to receive the amount of the verdict recovered by him in this case, subject to the right of Challen W. and Roy J. Waychoff to deduct therefrom attorney's fees which, by reason of an assignment to them, they were entitled to receive from the amount of the verdict.

3. Challen W. and Roy J. Waychoff are entitled to receive, by virtue of a contingent fee agreement and an assignment to them of a part of the verdict, one-fourth of the amount of the verdict recovered in this case.

4. R. E. Kent, alleged assignee of the plaintiff, Downey Cramer, claiming by virtue of an assignment to him of one-half of the amount of the verdict recovered for personal injuries, is not entitled to any part of this verdict, his claim being postponed to the claim of Challen W. and Roy J. Waychoff, attorneys-at-law, and to the insurance company, they having a prior right to take the funds offered to be paid into court by reason of their several assignments as hereinbefore set forth.

5. Downey Cramer, the plaintiff, is not entitled to receive any part of the verdict because of his failure to protect the insurance company by bringing suit for damages due to the loss of the truck as he had agreed to do by his subrogation assignment to the insurance company, which paid him $2600 for the loss of his truck.

### Order.

And now, Oct. 21, 1929, this matter came on to be heard, and, after due consideration, it is ordered and directed that the defendant, the Equitable Gas Company, shall pay to Challen W. and Roy J. Waychoff the sum of $214.58, together with lawful interest from June 15, 1927, the date of the verdict, being the one-fourth of the amount of the verdict in this case; and shall pay to the Providence Washington Insurance Company the sum of $643.76, with lawful interest from June 15, 1927; and upon the payment by it of said sums and interest and the costs of this case, the said verdict shall be marked satisfied of record.            From S. M. Williamson, Waynesburg, Pa.