## UNION JOINT STOCK LAND BANK OF DETROIT, MICH., v. BYERS et al.

### No. 6717.

Circuit Court of Appeals, Third Circuit.

Aug. 16, 1938.

Rehearing Denied Nov. 4, 1938.

decree of subrogation. The case arises out of the following situation.

Robert S. Byers, hereinafter referred to as the "decedent," died intestate June 26, 1914, the owner of a tract of 98 acres and 64 perches of land in Franklin Township, Fayette County, Pennsylvania. He left to survive him a widow, Caroline Byers, and twelve children, one of whom has since died unmarried and intestate.

By deed dated August 22, 1918, the defendant's children, together with his widow, conveyed the real estate to one of their number Thomas Benjamin Byers, hereinafter referred to as "Byers," for the consideration of $7,000, all of which was then paid except $2,333.34. This sum, which was one-third of the purchase price and represented the widow's dower interest in the property, was by the deed charged upon the land in the following language:

"Reserving, however, the widow's dower interest in the sum of $2333.34, which said sum is to remain and be a charge upon said land for and during the lifetime of the said Caroline Byers, widow of said Robert S. Byers, deceased, the interest thereon to be paid annually to the said widow for and during her natural life, and the principal thereof, to-wit, the sum of $2333.34, after death to be distributed to and among those legally entitled thereto."

In order to finance this conveyance Byers borrowed $4,200 from George Work and gave him a bond and mortgage in that amount dated September 30, 1918, covering the tract of land in question. In order to make this mortgage a first lien the widow and children of the decedent executed a paper which was delivered to Work, which postponed the lien of the dower charge to the lien of Work's mortgage. The decedent's widow, Caroline Byers, died October 24, 1925.

On March 13, 1927, Byers and his wife made an application to the Ohio-Pennsylvania Joint Stock Land Bank of Cleveland for a loan of $5,500. The bank granted the loan in the reduced amount of $4,500 and Byers and his wife gave it a judgment note and mortgage in that sum, the mortgage being secured upon the tract of land above mentioned and being properly recorded. The amount of the loan, less expenses, was paid by the bank to Byers, who in turn paid off the balance of $3,256 due on the Work mortgage. He agreed at the time to apply

Edwin B. Goldsmith, of Pittsburgh, Pa., and A. G. Masters, of Detroit, Mich., for appellant.

E. Dale Field, of Uniontown, Pa., for appellees.

Before THOMPSON and BIGGS, Circuit Judges, and MARIS, District Judge.*

MARIS, Circuit Judge.*

This is an appeal by the plaintiff from a decree of the District Court for the Western District of Pennsylvania dismissing its bill praying for an injunction and for a

---

*Appointed Circuit Judge June 24, 1938.

the balance, after payment of other expenses, on account of the dower charge. He also orally agreed to procure a quitclaim deed or postponement of the lien of the dower charge in favor of the bank as mortgagee.

About two years after procuring this loan from the bank Byers, having failed to procure a quitclaim deed from his father's heirs releasing the dower interest, at the instance of the bank attempted to procure a postponement of the dower charge in favor of the bank as mortgagee. He did procure the signature of six of the heirs to such a postponement paper. Four of them, however, signed under the express promise that the paper was not to be valid unless signed by all. The signatures of the remaining heirs could not be obtained. Subsequently Byers' attorney, at his request, mailed to the bank the paper thus signed by six of them. This was done without any authority from them.

In June, 1931, the Ohio-Pennsylvania Joint Stock Land Bank of Cleveland assigned the Byers' mortgage to the Union Joint Stock Land Bank of Detroit. Thereafter an action was commenced by scire facias in the Court of Common Pleas of Fayette County, Pennsylvania, by the heirs of the decedent against Byers to recover the amount of the dower charge and on February 8, 1932, judgment was entered in the action in favor of the heirs in the sum of $2,333.34 with interest. On February 15, 1932, the Union Joint Stock Land Bank of Detroit caused judgment to be entered against Byers and his wife on the judgment note accompanying the mortgage held by it.

On April 5, 1932, Byers filed a voluntary petition in bankruptcy in the court below and was duly adjudicated a bankrupt. In the bankruptcy proceedings the heirs, other than Byers himself, filed a claim on account of the judgment held by them on the dower charge. The trustee in bankruptcy of Byers with leave of court offered the real estate above mentioned at public sale "clear and divested and discharged of liens and encumbrances excepting that the land shall be sold subject to a dower charge of $2333.34 in favor of Caroline Byers, widow, now deceased, and to her legal heirs." At the sale the real estate was sold and thereafter conveyed by the trustee to the Union Joint Stock Land Bank of Detroit, the plaintiff below. The deed to the bank contained the following reservation:

"Also subject to a dower charge of $2,333.34 as reserved in a deed from Caro-line Byers et al to Thomas Benjamin Byers, recorded in the Recorder's Office of Fayette County, Pennsylvania, in Deed Book Vol. 374, page 340."

On April 10, 1935, the heirs of the decedent, other than Byers, caused a writ of levari facias to sell the real estate to be issued on the judgment procured by them in 1932 upon the dower charge. Whereupon on May 29, 1935, the Union Joint Stock Land Bank of Detroit filed its bill in equity in the court below against the heirs of the decedent and the sheriff of Fayette County praying for an injunction to restrain the sale and that it be subrogated to the rights of George Work under his prior mortgage. A preliminary injunction was granted, which after final hearing was dissolved, and the plaintiff's bill was dismissed. From that action the plaintiff has appealed.

The action of the court below was based upon its conclusion that the sale by the trustee in bankruptcy did not remove the dower charge from the land and that the plaintiff was not entitled to be subrogated to the rights of George Work under the mortgage which he formerly held against the land. The appellant complains that the court erred in both conclusions. After careful consideration, however, we are satisfied that the case was rightly decided.

■ Under the deed of August 22, 1918, from the widow and heirs of the decedent to Byers the widow's dower which had been an estate in the land became a charge upon it. Dexter's Appeal, 81 Pa. 403; Hurst, Adm'r, v. Spotts, 294 Pa. 221, 144 A. 91. The lien or charge thus created could not have been affected by the grantee's bankruptcy fourteen years later. While in the bankruptcy proceedings it may be that the land could have been sold clear of the dower charge and the latter transferred to the proceeds, no effort was made to do so. On the contrary the sale of the bankrupt's land was expressly made subject to the dower charge.

■ Appellant argues, however, that since the appellee heirs recovered judgment on the dower charge within four months prior to bankruptcy and filed a claim in the bankruptcy proceedings on account of the judgment so recovered the latter was discharged by those proceedings. It may well be that any personal liability of the bankrupt to pay the judgment was discharged. The latter was, however, in its nature a judgment de terris. Hurst, Adm'r, v. Spotts,

supra. As such it was an adjudication that the dower charge was recoverable out of the land. Consequently the fact that it was obtained within four months of bankruptcy could not affect its validity since it did not establish a new lien but merely adjudicated an existing one. Rader v. Star Mill & Elevator Co., 8 Cir., 258 F. 599.

Nor was the plaintiff entitled to be subrogated to the rights of George Work under his prior mortgage. It is settled in Pennsylvania that subrogation will not be decreed in favor of a mere volunteer who without any duty, legal or moral, loans money to pay the debt of another. Campbell v. Foster Home Ass'n, 163 Pa. 609, 30 A. 222, 26 L.R.A. 117, 43 Am.St.Rep. 818; International Harvester Co. v. Tuscarora Tp., 43 Pa.Super. 410; In re Commonwealth Trust Co., Trustee, No. 1, 247 Pa. 508, 93 A. 766.

In the case last cited it appeared that funds advanced by Mrs. Richardson upon a subsequent mortgage had been used, as in the case before us, by Mrs. Harper, the mortgagor, to pay off a prior mortgage held by Kennedy. It further appeared that a previous conveyance of property in trust for the benefit of Mrs. Harper expressly provided for the payment of the Kennedy mortgage. After foreclosure of the mortgaged property upon a prior lien Mrs. Richardson's assignee sought to be subrogated to the rights of Kennedy to receive payment from the trust fund. The Supreme Court of Pennsylvania, reversing the Court of Common Pleas of Allegheny County, held that the doctrine of subrogation had no application since Mrs. Richardson, in loaning Mrs. Harper the money with which she paid off the Kennedy mortgage, was a mere volunteer. The court said, page 515, 93 A. page 768:

"In Campbell v. Foster Home Ass'n, 163 Pa. 609, 636, 30 A. 222, 225 (26 L.R.A. 117, 43 Am.St.Rep. 818), Green, J., quotes with approval from Beach on Modern Equity Jurisprudence, § 801, as follows: 'But one who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. He must have paid upon request or as surety, or under some compulsion made necessary by the adequate protection of his own right. In such a case, instead of creating any right of subrogation, the payment operates as the absolute discharge of the debt so paid. Thus one who discharges an encumbrance upon property which he has no interest in having relieved is not thereby subrogated to the rights of the holder of the encumbrance, and the loaning of money to discharge a lien does not subrogate the lender to the rights of the lien holder.' He also quotes from Sheldon on Subrogation, § 240, as follows: 'The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own.' In the present case the Kennedy mortgage was not paid under any compulsion or to protect any right of the new lender. It was merely paid to discharge an encumbrance upon property in which Mrs. Richardson had previously no interest. Of course, if the encumbrance had not been discharged the loan would not have been made. Mrs. Richardson was under no legal obligation whatever to make payment of the Kennedy mortgage."

In the present case the Ohio-Pennsylvania Joint Stock Land Bank of Cleveland was a mere volunteer so far as the Work mortgage was concerned. When it advanced funds to Byers on the mortgage he gave it, it had no prior interest in the land, nor any other interest to protect by so doing. It had no obligation or duty, legal or moral, to provide the funds necessary to pay off the Work mortgage. It granted a loan to Byers solely for its own profit. If it desired to retain the prior lien of the Work mortgage it could have stipulated for the assignment to it of that mortgage instead of its satisfaction. This, however, it did not do. It follows under the rule announced in the cases cited that it has no equity to invoke the aid of subrogation but must be left in the position which it chose for itself.

Finally the appellant contends that it is entitled to a lien prior to the dower charge so far as concerns the interests of the six heirs who signed the postponement paper. With this we cannot agree, however. The court below found upon sufficient evidence that the paper was executed by four of these six heirs under a parol promise that it was not to be valid unless signed by all. This was a condition precedent to its validity. Possession of the paper having been procured by the plaintiff in violation of this condition, it cannot form the basis of any rights in the latter. Keener v. Crago, 81* Pa. 166; Black v. Shreve, 13 N.J.Eq.

455. Parol evidence was properly received on the question whether the condition precedent had in fact been imposed by the signers. This evidence was directed to the question whether the postponement paper ever actually became a legal instrument and not to whether the terms of such an instrument had been varied by parol.

Affirmed.